A03A0520. LLOYD v. THE STATE.
(577 SE2d 854)

PHIPPS, Judge.

At a bench trial, Elizabeth Lloyd was convicted of fraudulently obtaining a controlled substance (hydrocodone) and of fraudulently obtaining a dangerous drug (amoxicillin), both drugs having been lawfully prescribed to Donetta Way. Following denial of her motion for new trial, Lloyd appeals her convictions. She challenges the effectiveness of her trial lawyer, the trial court's admission of similar transaction evidence, the sufficiency of the evidence to support her

convictions, and the validity of her waiver of a jury trial. Finding no merit in any of these challenges, we affirm.

The State's evidence showed that Lloyd and Way knew one another primarily because their daughters were classmates and friends. On February 16, 2000, Way underwent a dental procedure and was given written prescriptions for amoxicillin (an antibiotic) and Lorcet (a painkiller containing the codeine-derivative hydrocodone). When Way arrived home, Lloyd was there with her daughter, Vanessa, and with Way's daughter, Brittany; and she offered to pick up the prescriptions for Way. Way accepted the offer, and Lloyd delivered the drugs to Way without incident.

Way testified that although the amoxicillin was effective, she had an allergic reaction to the Lorcet and did not request a refill of either prescription. Testimony given by Way's dentist authorized the jury to find that someone representing herself as Way called the dental office on or about March 1, 2000, and asked the receptionist to call in refills of the amoxicillin and Lorcet prescriptions to a Kroger pharmacy. Telephone records showed that at about this time, a call was placed from the Lloyd residence to Way's dentist's office. The Kroger pharmacist testified that on March 4, Lloyd telephoned the pharmacy and asked if the prescription refills had been called in and whether Brittany Way could pick them up. Brittany Way testified that on March 4, Lloyd gave her money while she was at the Lloyd home visiting Vanessa, drove her to the Kroger pharmacy, had her pick up the prescription refills, and then took possession of them. The Kroger pharmacist verified that the prescription refills were picked up by Brittany Way. Brittany Way testified that Lloyd never gave the prescriptions back to her so that she could give them to her mother and that she, Brittany, in fact observed Lloyd taking the medications. Way testified that she was not aware that the prescriptions had been refilled until Brittany told her. After verifying this information with the Kroger pharmacy, Way and her husband alerted the police. They also sued Kroger.

Similar transaction evidence included testimony by a CVS pharmacist and by Way's husband that in late February 2000, Lloyd attempted without success to have Way's amoxicillin and Lorcet prescriptions refilled at a CVS pharmacy. The pharmacist testified that Lloyd called the pharmacy, asked that the prescriptions be refilled, said that they were for her girlfriend, and later came in to pick them up. According to the pharmacist, the dentist had called and said not to refill the prescriptions. Way's husband testified that he was at the CVS pharmacy when Lloyd came in, heard the pharmacist utter his wife's name, asked if Lloyd was trying to pick up a prescription for his wife, and was told yes. Way's husband further testified that he alerted the pharmacist that Lloyd was not authorized to obtain pre-

scription refills for his wife. The CVS pharmacist gave like testimony.

In Lloyd's defense, her husband gave testimony to the effect that he had overheard a telephone conversation between Lloyd and Way during which Way had authorized Lloyd to obtain the prescription refills. Brittany Way also testified that on the day in question she thought she overheard a telephone conversation between her mother and Lloyd. Lloyd's husband testified that after his wife was arrested, he found the pills on their refrigerator and threw them away.

Testimony given by an Eckerd pharmacist authorized the judge to find that, earlier in the month of February, Lloyd telephoned the Eckerd pharmacist and asked him to fill a prescription for the narcotic painkiller OxyContin that had been issued to her sister, that the pharmacist insisted that Lloyd's sister pick up the prescription or verify that it had been issued to her, and that neither Lloyd nor her sister brought the prescription to the pharmacy to be filled.

1. Lloyd claims that she was deprived of her constitutional right to effective assistance of counsel.

To prevail on a claim of ineffective assistance of trial counsel, Lloyd must show that counsel was deficient and that, but for the deficiency, there was a reasonable probability that the outcome of her trial would have been different.[1] She must overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct.[2]

(a) Lloyd first complains of trial counsel's failure to call as defense witnesses Way's son and her dentist's receptionist. At the hearing on her motion for new trial, Lloyd claimed that Way's son would have testified that his mother asked Lloyd to have her prescriptions refilled and that Way's dentist's receptionist would have testified that Way called the dental office and requested the prescription refills. Neither witness, however, testified at the hearing, and no affidavits from them were introduced. Moreover, the receptionist's pretrial deposition does appear in the record, and, in it, she testified that a woman representing herself as a friend of Donetta Way's telephoned the dental office and asked for prescription refills. In addition, Lloyd's trial counsel testified at the motion for new trial hearing that he did not call Way's son as a witness because he did not expect the child to give testimony favorable to the defense. Under the circumstances, the trial court was authorized to find that counsel's decision not to call the witnesses constituted reasonable trial strategy.[3]

(b) Lloyd complains of counsel's failure to object to hearsay testimony given by the CVS pharmacist and by Way's husband.

---

[1] *Moody v. State*, 273 Ga. 24, 27 (5) (537 SE2d 666) (2000).

[2] *Baker v. State*, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001).

[3] See generally *Hamilton v. State*, 274 Ga. 582, 589-590 (13) (555 SE2d 701) (2001).

The bulk of the testimony given by the CVS pharmacist was admissible either as nonhearsay or as hearsay to explain conduct. "Testimony is considered hearsay only if the witness is repeating another's statement in order to demonstrate its truth. Otherwise it is a verbal act and thus original evidence rather than hearsay."[4] "[H]earsay testimony is admissible to explain the conduct of an actor where the actor's conduct and motive are matters concerning which the truth must be found."[5] Although both Way's husband and the CVS pharmacist testified to various inadmissible hearsay statements made by the other,[6] Lloyd's constitutional rights under the confrontation clause were not violated because each hearsay declarant was present at trial and available for cross-examination.[7] Moreover, any inadmissible hearsay was cumulative of legally admitted evidence of the same facts.

(c) Lloyd claims that trial counsel was ineffective in persuading her not to testify.

Whether to testify in one's own behalf is a decision to be made by the accused after full consultation with counsel.[8] At the hearing on Lloyd's motion for new trial, counsel testified that he advised Lloyd not to testify because the facts underlying her defense were adequately established through the testimony of other witnesses and, for a number of reasons, he thought that subjecting Lloyd to cross-examination would prove harmful to the defense. The trial court was authorized to find this trial strategy reasonable.

2. Lloyd claims that the trial court abused its discretion by admitting the similar transaction evidence.

> In order for evidence of independent offenses or acts to be admitted into evidence under *Williams*, . . . the state must make three affirmative showings with respect to each independent offense to be introduced: (1) the evidence must be admitted for a proper purpose; (2) there must be sufficient evidence to establish the accused committed the independent act; and (3) there must be a sufficient connection or

---

[4] (Citations and punctuation omitted.) *Wright v. State*, 226 Ga. App. 848, 850 (5) (487 SE2d 405) (1997). Statements Lloyd made to the pharmacist in an attempt to convince him to refill the prescriptions amounted to verbal acts.

[5] *Brown v. State*, 274 Ga. 31, 36 (2) (549 SE2d 107) (2001). The pharmacist's testimony concerning the dentist's instruction not to refill the prescriptions was admissible to explain the pharmacist's conduct in not refilling the prescriptions.

[6] In this regard, Way's husband testified that the pharmacist told him that Lloyd was trying to pick up a prescription for his wife, and the pharmacist testified that Way's husband then informed him that Lloyd was not authorized to do so.

[7] *London v. State*, 274 Ga. 91, 94 (4) (b) (549 SE2d 394) (2001).

[8] *Van Alstine v. State*, 263 Ga. 1, 2 (426 SE2d 360) (1993), citing *Reid v. State*, 235 Ga. 378 (219 SE2d 740) (1975).

similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[9]

" 'A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion.' [Cits.]"[10]

> In exercising this discretion, the court should consider whether "the State's need for the similar transaction evidence outweigh(s) the prejudice inherent to the defendant." This consideration consists of at least two questions. First, is the issue for which the State is introducing the evidence a genuinely disputed issue? . . . Second, does the State need this evidence to prove the issue, or can the fact be proved otherwise?[11]

The disputed issue in this case was whether Way authorized Lloyd to obtain prescription refills for her on the occasion in question. The State offered evidence of the two independent transactions to show that Lloyd was not authorized to obtain refills of the prescriptions and that she therefore possessed a criminal bent of mind.

Of the two extrinsic transactions, the first showed that on a prior occasion Lloyd had attempted without Way's authority to obtain refills of the same prescriptions that are the subject matter of this prosecution. Certainly, evidence of this transaction was admissible to rebut Lloyd's claim that she was authorized to obtain the prescription refills on the date alleged in the indictment.

Proof of the second independent transaction showed that at about the same time as the events in this case, Lloyd attempted to fill a prescription for another controlled substance, OxyContin, by telling the pharmacist that the prescription had been issued to her sister; the pharmacist would not fill the prescription unless Lloyd's sister verified its authenticity; and neither Lloyd nor her sister ever presented the prescription to the pharmacist. It is debatable whether this proof established by a preponderance of the evidence that Lloyd did not have authority to fill the OxyContin prescription.[12] Nonetheless, it has been recognized that the court in a bench trial has

---

[9] *Gardner v. State*, 273 Ga. 809, 810 (2) (546 SE2d 490) (2001), citing *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[10] *Livery v. State*, 233 Ga. App. 332, 334 (1) (a) (503 SE2d 914) (1998).

[11] (Footnote and emphasis omitted.) *Smith v. State*, 232 Ga. App. 290, 292-293 (1) (501 SE2d 523) (1998).

[12] See generally *Freeman v. State*, 268 Ga. 185, 187 (4) (486 SE2d 348) (1997) (State is only required to prove the accused committed a similar transaction by a preponderance of the evidence); *Jones v. State*, 195 Ga. App. 569, 570 (2) (394 SE2d 387) (1990) (proof of conviction unnecessary).

broader discretion in admitting similar transaction evidence than in jury trials.[13] We cannot say that the trial court committed reversible error in considering this independent transaction and according it whatever weight it chose.

3. Lloyd challenges the sufficiency of the evidence to support her convictions.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and defendants no longer enjoy the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia.* . . . . [Cit.][14]

"Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the [factfinder] to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the [conviction] will be upheld."[15] Adjudged by these principles, the evidence in this case was clearly sufficient to support Lloyd's convictions.

4. Finally, Lloyd claims that she did not knowingly, freely, and voluntarily waive her right to a jury trial. In this regard, she testified at the hearing on her motion for new trial that, at the time of trial, she was suffering from psychological problems stemming from anxiety and attention deficit disorder. Consequently, Lloyd claims that she lacked the capacity to make a valid waiver.

Although the issue of Lloyd's jury trial waiver is not properly before us because it is being raised for the first time on appeal,[16] we note that the trial record supports a finding that Lloyd knowingly and intelligently waived her right to a jury trial.[17] In this regard, the trial transcript shows that Lloyd testified, in response to questioning by defense counsel in the presence of the trial court, that she understood that she had a right to a jury trial, that she and counsel had

---

[13] *Enloe v. State,* 239 Ga. App. 513, 514 (2) (520 SE2d 925) (1999).

[14] (Citation, punctuation and footnotes omitted.) *Williams v. State,* 253 Ga. App. 458 (1) (559 SE2d 516) (2002), citing *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[15] (Punctuation and footnote omitted.) *Dean v. State,* 252 Ga. App. 204, 205 (1) (555 SE2d 868) (2001).

[16] Compare *Balbosa v. State,* 275 Ga. 574 (571 SE2d 368) (2002).

[17] See *Watson v. State,* 274 Ga. 689, 690 (2) (558 SE2d 704) (2002).

decided to try the case before the judge without a jury, and that she was knowingly and voluntarily giving up her right to a jury trial. Lloyd's trial attorney might have given additional testimony at the motion for new trial hearing confirming that Lloyd made a valid jury trial waiver, but the State was not called on to elicit such testimony because this issue was not raised by Lloyd below. Lloyd's final claim of error provides no ground for reversal.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 12, 2003 — 

*Martin G. Hilliard*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.