A03A0766. CARTER v. THE STATE.
(583 SE2d 126)

JOHNSON, Presiding Judge.

A jury found Ellis Eugene Carter guilty of trafficking in cocaine, possession of cocaine, and possession of cocaine with intent to distribute. He appeals from the convictions entered on the verdict, contending that the evidence was insufficient to support the verdict, that the trial court erroneously permitted the introduction of character evidence and similar transaction evidence, and that the court improperly allowed a police officer to speculate as to why the con-

---

[21] See *Hasty v. State*, 210 Ga. App. 722, 724-725 (1) (437 SE2d 638) (1993).

trolled drug transaction was delayed. Each of the enumerations is without merit, so we affirm the convictions.

1. In two enumerations, Carter contends that the evidence, which was circumstantial, was insufficient to show he possessed cocaine. He urges that the cocaine was not found on his person, that he was not in the car where some of the drugs were found, that he had no connection to the house where the rest of the drugs were recovered, and that he had no control over the cocaine. The jury was authorized to find from the evidence that Carter either constructively possessed the cocaine or was a party to the crimes charged.

After the jury's verdict of guilty, a defendant can no longer rely on the presumption of innocence, and this Court cannot weigh the evidence or judge the witnesses' credibility.[1] We must construe the evidence to uphold the verdict and determine only whether the evidence is such as to enable any rational trier of fact to find the defendant guilty of the crimes charged beyond a reasonable doubt.[2]

So viewed, the evidence shows that on October 9, 2001, police enlisted the help of an informant to make a controlled drug buy from Carter. As officers listened, the informant telephoned Carter and the two agreed to meet at a house on Woodward Street. Police placed an audio transmitter on the informant, and then watched as the informant traveled to the designated location. Carter and Adrian Williams arrived a short time later in a Chevrolet Beretta. Williams was driving. The men walked toward each other, and, with officers listening, Carter quoted the informant a price of $5,700 for seven ounces of cocaine. The informant left, ostensibly to retrieve the money. He returned moments later and told Carter that his girlfriend was bringing the money.

Carter then instructed Williams to "go ahead and get that." Officers watched Williams drive the Beretta to a house on Superba Avenue, which was about one mile away. Williams left the house and drove back toward Woodward Street. Officers stopped Williams while he was en route. A search of the car revealed sandwich bags containing 28 grams of cocaine. Officers also found a cellular telephone service agreement in Carter's name dated August 27, 2001, in the car's console. It is not clear from the transcript who owned the car, though title was not in Carter's name.

Officers then conducted a consent search of the Superba Avenue residence, where Williams lived with his grandparents. In the house police found 12 bags of cocaine. In the meantime, a passerby told Carter that the drug task force was in the area, and he and the infor-

---

[1] *Humphreys v. State*, 253 Ga. App. 344, 345 (559 SE2d 99) (2002).
[2] Id.

mant left the vicinity in the informant's car. Police stopped the informant's car. The testimony is in conflict as to whether any cocaine was found on Carter's person. Carter and Williams were later arrested and charged with drug violations.

The informant testified at trial that he met Carter as agreed, and agreed to buy seven ounces of cocaine from Carter for $5,600 or $5,700.

Under OCGA § 16-2-21, one who intentionally aids and abets in the commission of a crime is a party to the crime and may be convicted of the commission of the crime.[3] The presence and conduct of Carter in agreeing to sell the drugs to the informant, setting the price, meeting the informant as agreed, sending Williams to retrieve the drugs in a car in which Carter rode and kept personal papers, and waiting for Williams to return with the drugs and the informant's girlfriend to return with the money so the transaction could be completed are circumstances from which his aiding and abetting may be inferred.[4]

Furthermore, a person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.[5] And, if two or more persons share actual or constructive possession of the thing, possession is joint, and the jury would be authorized to convict if it should find, beyond a reasonable doubt, that the defendant had actual or constructive possession, either alone or jointly with others.[6] Possession can be proven by circumstantial as well as direct evidence.[7] All of the competent evidence adduced at trial may be considered to show the defendant's constructive or joint possession.[8] Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis save that of defendant's guilt is a question for the jury unless the verdict is insupportable as a matter of law.[9] We conclude that the jury in the present case could have found beyond a reasonable doubt that Carter knowingly had the power and the intention to exercise control over the cocaine.[10]

Testimony was presented that Carter ordered Williams to retrieve the drugs, that Carter had just been in the car Williams used to retrieve and transport the drugs, that Carter kept personal items in that car, that he set the price and meeting place, that he showed

---

[3] *Eason v. State*, 234 Ga. App. 595, 596 (1) (507 SE2d 175) (1998).
[4] Id.
[5] *Addison v. State*, 254 Ga. App. 347, 349 (3) (564 SE2d 204) (2002).
[6] Id.
[7] *Wilson v. State*, 256 Ga. App. 741, 742 (1) (569 SE2d 640) (2002).
[8] Id.
[9] Id.
[10] See *Allen v. State*, 191 Ga. App. 623, 625 (2) (382 SE2d 690) (1989).

up for the sale, that he waited for Williams to bring the drugs as directed, and that he left upon receiving word that the drug squad was in the area. Under the circumstances, we find the evidence was sufficient to find Carter guilty beyond a reasonable doubt of sole or joint constructive possession of the cocaine, or at least of being a party to the drug crimes.[11]

2. Carter complains that the police officer improperly impugned his character by testifying that he knew Carter by his nickname through his experience as a drug task force officer.

At trial, a police officer describing the controlled buy testified that when Williams and the informant first spoke, the informant asked Williams, "Where's Man at?" The prosecutor asked, "And you understand Man to be Mr. Carter's street name?" The officer replied, "Yes." Defense counsel objected and moved for a mistrial on the basis that the officer had previously testified that he had been a drug task force agent for several years. The testimony, counsel complained, implied that Carter had a history and reputation with the drug task force. The testimony did not place Carter's character into evidence.

There was no evidence indicating how the officer knew Carter's nickname, or that Carter had any history with the task force. The mere fact that the officer knows a defendant by his "street name" does not suggest bad character.[12] Similarly, the fact that the officer is familiar with a defendant does not necessarily suggest prior criminal conduct and does not require a mistrial.[13] This enumeration lacks merit.

3. According to Carter, the state was permitted to introduce similar transaction evidence by having the officer testify that the informant gave him information about Carter that the officer already knew through his experience as a drug task force officer. He asserts that the prosecutor never filed a notice pursuant to Uniform Superior Court Rule 31.1, which requires the prosecution to notify the defense of its intention to present evidence of similar transactions or occurrences by giving and filing the notice prior to trial.[14] There was no error.

The prosecutor asked the officer if the informant gave him any significant information regarding Carter or Williams on the night before the transaction was to occur. The officer replied, "No. He gave information about Ellis Carter that I had known for —." Defense counsel interrupted, objecting on the grounds that the testimony implied that the officer was familiar with Carter through his drug

---

[11] See *Ryans v. State*, 226 Ga. App. 595, 597 (1) (487 SE2d 130) (1997).

[12] *Riley v. State*, 268 Ga. 640, 643 (4) (491 SE2d 802) (1997).

[13] *Abney v. State*, 240 Ga. App. 280, 284 (5) (523 SE2d 362) (1999).

[14] *Lobdell v. State*, 256 Ga. 769, 772 (3) (353 SE2d 799) (1987).

task force experience. The objection was overruled. When the prosecutor rephrased the question, the officer simply replied that the informant did give him "some information concerning Mr. Carter and Mr. Williams." The officer did not elaborate, did not divulge what information he already knew about Carter, and in no way suggested that Carter had any prior experience with the drug task force. The testimony complained of is not evidence of prior similar transactions.

4. When the state asked the officer how long Williams stayed at the Superba Avenue location, the officer replied that he remained there about 30 minutes. The prosecutor asked if the time lapse was surprising to the officer. He responded, "Yes. Everybody was getting frustrated because of the delay thinking that there's no way this is going to work because Mr. Carter appar — apparently, he was going to have to see the money before Mr. Williams would bring the seven ounces back." Carter maintains that the officer's remark that Carter was going to have to see the money before he would produce the cocaine amounted to a conclusion by a nonexpert witness.

We note that the officer gave similar testimony earlier, but there was no objection. Specifically, the officer previously testified that "when [the informant] states he wants seven and Mr. Carter gives a price of fifty-seven, and he had — does not give an indication that he has it right then, from that point, from my experience, I knew that apparently Mr. Carter wanted to see the money beforehand." Then the officer testified that the informant told him that "apparently [Carter] wants to see the money, that he didn't see anything that they had with them at the time." Accordingly, any error was harmless.[15]

In addition, the officer prefaced the nonresponsive remark at issue with the word "apparently." Clearly, the statement was just his opinion as to why the drugs were not delivered more quickly. The officer had seven years experience on the drug task force. The trial court properly allowed the officer, based on his experience and training, to state his opinion as to why the drugs were not being delivered immediately.[16] This enumeration presents no basis for reversal.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED MAY 9, 2003.

*Hine & Niedrach, Christopher P. Twyman,* for appellant.

---

[15] See *Mapp v. State,* 258 Ga. 273, 275 (6) (368 SE2d 511) (1988).
[16] See *Buffington v. State,* 245 Ga. App. 637, 638 (1) (538 SE2d 528) (2000).

*Bryant G. Speed II, District Attorney, Charles S. Cox, Assistant District Attorney*, for appellee.