A03A1472. SUTTON v. THE STATE.
(583 SE2d 897)

BLACKBURN, Presiding Judge.

Following his conviction by a jury of two counts of selling cocaine, Bobby Sutton appeals the denial of his motion for new trial, arguing that: (1) the evidence was insufficient to support the verdict; (2) the assistance of his trial counsel was ineffective; and (3) the trial court erred in granting the State a continuance over his objection. For the reasons set forth below, we affirm.

1. Sutton contends that the evidence was insufficient to support his convictions.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion

---

[16] *Whitaker v. State,* 275 Ga. 521, 523-524 (570 SE2d 317) (2002).
[17] *Warren v. State,* 158 Ga. App. 533 (281 SE2d 291) (1981).

for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and defendants no longer enjoy the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Roberts v. State*.[2]

Viewed in that light, the record shows that Lieutenant Tim Menard of the Harris County Sheriff's Office was told by Lieutenant Robert Fawley, an officer with the West Point Police Department, that Terry Lee Coleman was willing to act as a confidential informant. Menard met with Coleman on April 29, 1999, and decided to have Coleman attempt to purchase crack cocaine from Sutton. After having his person and car searched by Menard, Coleman, who had been fitted with a listening device, drove to Sutton's house. Menard, who had followed in his own vehicle, took up a position about 50 to 75 feet away on a small rise from which he could look down on Sutton's house and yard.

Because Sutton's house was protected by a chain link fence topped with barbed wire and dogs in the yard, Coleman called to Sutton through the gate. Coleman asked about the dogs, and Sutton told him that he had them because he did not want law enforcement coming into his house. When Coleman asked about purchasing rock cocaine, Sutton told him that he did not have any but that he would be going into LaGrange and that Coleman should check back with him.

On May 2, 1999, Coleman met with Lieutenant Fawley at a secure location. Fawley searched Coleman and his car, gave Coleman $50 in marked currency for a drug purchase, and then followed Coleman to Sutton's residence. As Fawley watched with binoculars from woods across the road from Sutton's house, Coleman approached the house and spoke with Sutton, who gave him cocaine in exchange for the $50. After the transaction, Coleman, with Fawley following, returned to the secure location and turned four rocks of cocaine over to Fawley.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Roberts v. State*, 258 Ga. App. 107 (1) (572 SE2d 744) (2002).

On May 13, 1999, Fawley again met with Coleman and asked him to make another purchase of cocaine from Sutton. After the routine search, Coleman drove to Sutton's house and Fawley returned to his vantage point across the road from Sutton's house. Again watching through binoculars, Fawley saw Coleman go through the gate and knock on Sutton's door. After talking briefly, Sutton and Coleman completed the drug sale. Upon their return to the secure location, Fawley retrieved two large rocks of cocaine from Coleman.

On June 15, 1999, Menard and Fawley met with Coleman and asked him to make another drug purchase from Sutton. After searching him, placing a listening device on him, and giving him $50 in marked currency, Menard and Fawley followed Coleman to Sutton's house. Though the officers parked too far away to clearly see the man who carried out the drug transaction at Sutton's house with Coleman, Menard, who was listening over the radio, testified that he recognized the man's voice as that of Sutton.

In addition to the testimony of Lieutenants Menard and Fawley at trial, Coleman identified Sutton as the man from whom he attempted to purchase, or actually purchased, cocaine on each of the four occasions. This evidence was sufficient for a rational trier of fact to find Sutton guilty beyond a reasonable doubt of sales of cocaine on May 2, 1999, and May 13, 1999.

Sutton argues that the testimony of Coleman, who faced possible fines or incarceration if he did not cooperate as an informant, was biased, self-serving, and not credible. Besides the fact that the testimony of the law enforcement officers alone was sufficient to support the convictions, "[t]he credibility of the witnesses and the weight to be given the evidence are the sole province of the jury, and it is not for appellant or this Court to decree which witness is credible and whose testimony is consistent, self-serving or less weighty." (Citation omitted.) *Autry v. State*.[3]

2. Sutton maintains, on several grounds, that he received ineffective assistance of counsel. We disagree.

> The burden is on [Sutton] to establish that he received ineffective assistance of counsel. To establish a claim of ineffective assistance of trial counsel, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense. In determining prejudice, the question is whether, without the errors of counsel, there is a reasonable probability that the jury would have had a reasonable doubt of guilt. As always, there is a strong

---

[3] *Autry v. State*, 230 Ga. App. 773, 774 (1) (498 SE2d 304) (1998).

presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment. A charge of ineffective assistance of counsel is not judged by a standard of errorless counsel or by hindsight, but rather whether counsel rendered reasonably effective assistance; there is a critical distinction between inadequate preparation and unwise choices of trial tactics and strategy, which are not to be judged by hindsight or result.

(Citations, punctuation and footnotes omitted.) *Craft v. State*.[4] "The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous." *Johnson v. State*.[5]

(a) Sutton first contends that his trial counsel was ineffective because he failed to request a continuance to secure necessary material witnesses and medical records that were vital to his defense. We disagree.

The material witnesses to whom Sutton refers were Robin Ann Glaze, the daughter of Sutton's girlfriend, Brenda Glaze, and Sutton's nephew, Jamal Sutton. Sutton asserts that the testimony of these witnesses would have supported an alibi defense.

The record shows that Sutton did not inform his trial counsel, who had also represented him at an earlier bond revocation hearing involving the same offenses, of a possible alibi defense until the morning of trial. The State asked the trial court not to allow Robin Ann Glaze and Jamal Sutton, whose names he had not been furnished previously, to testify. Finding that the defense acted in bad faith by failing to divulge the identity of these witnesses until the morning of trial, the trial court refused to allow them to testify at trial. Any fault, therefore, lies not with trial counsel but with Sutton himself. "A client cannot simply withhold relevant information within his knowledge, of which his attorney would have no reason to be aware, and then claim that the attorney was ineffective for failing to discover such information on his own." *Callaway v. State*.[6]

Moreover, even if the trial court had allowed these two witnesses to testify, defense counsel's failure to call them as witnesses and have them provide alibi testimony would not have constituted ineffective assistance. Defense counsel testified at the hearing on the motion for new trial that: the testimony of Robin Ann Glaze and Jamal Sutton would be essentially the same as that of Brenda Glaze; none of these

[4] *Craft v. State*, 254 Ga. App. 511, 520-521 (13) (563 SE2d 472) (2002).
[5] *Johnson v. State*, 214 Ga. App. 77, 78 (1) (447 SE2d 74) (1994).
[6] *Callaway v. State*, 247 Ga. App. 310, 320 (6) (a) (542 SE2d 596) (2000).

witnesses would have been able to account for all of Sutton's time between April 29, 1999, and June 18, 1999, the day Sutton was arrested; and he believed that Sutton's best defenses would be mistaken identity and attacking the credibility of the confidential informant's testimony. "The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of counsel after consultation with the client." *Mack v. State*.[7] Such tactical decisions provide no grounds for reversal unless they "are so patently unreasonable that no competent attorney would have chosen them." (Punctuation omitted.) Id. "[A]lthough another lawyer may have conducted the trial differently, this does not mean that appellant did not receive a vigorous and complete defense. In fact, appellant was acquitted for one of the serious crimes for which he was being tried." (Citations omitted.) *Jones v. State*.[8] Finally, it must be noted that the suggestion that it is reasonably probable that the presentation of additional defense witnesses would have resulted in Sutton's acquittal is rank speculation. *Garrett v. State*.[9] We conclude, therefore, that the alleged acts or omissions of Sutton's trial counsel did not constitute ineffective assistance of counsel. Id.

Sutton also complains that trial counsel failed to render effective assistance because he did not pursue a continuance to secure certain medical records. However, because these medical records do not appear in the record, we cannot review this claim. *Taylor v. State*.[10]

(b) Sutton next argues that trial counsel rendered ineffective assistance in failing to establish that the discrepancy between the date set forth in Count 1 of the indictment, May 3, and the date the sale was alleged at trial to have occurred, May 2, was a material fact. This enumeration of error, however, "is deemed abandoned as [Sutton] has not referenced the record nor has he supported this claim of error by any citation to authority or reasoned argument." (Footnotes omitted.) *Gilbert v. Montlick & Assoc.*[11]

(c) Sutton also asserts that his trial counsel failed to fully interview Coleman and perform a background check on him. He maintains that this was a vital error because the State did not have a case without the testimony of Coleman, and that trial counsel should have completed a background check to determine facts necessary to rebut Coleman's testimony. He also complains that trial counsel failed to

[7] *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000).
[8] *Jones v. State*, 180 Ga. App. 706, 707 (350 SE2d 309) (1986).
[9] *Garrett v. State*, 196 Ga. App. 872, 873 (397 SE2d 205) (1990).
[10] *Taylor v. State*, 248 Ga. App. 235, 237 (2) (546 SE2d 20) (2001).
[11] *Gilbert v. Montlick & Assoc.*, 248 Ga. App. 535, 537-538 (5) (546 SE2d 895) (2001).

establish the reason Sutton was targeted for the drug transactions. These assertions are meritless.

First, as we have observed above, the State had a case against Sutton without the testimony of Coleman. The testimony of Lieutenants Menard and Fawley was sufficient to convict Sutton of the crimes with which he was charged.

Second, the record shows that trial counsel spoke to Coleman on more than one occasion prior to trial after learning of his identity, secured Coleman's criminal history, and used the information in his file to cross-examine Coleman. Again, it is rank speculation to suggest that it is reasonably probable that Sutton would have been acquitted if trial counsel had "fully" interviewed Coleman. *Randall v. State*.[12] "Such speculation cannot serve as the basis of an ineffectiveness claim." *Whited v. State*.[13]

(d) Sutton argues that his counsel rendered ineffective assistance because he failed to allow Sutton to testify at trial. The trial transcript belies this argument.

The record shows that the trial court questioned Sutton extensively concerning his understanding of his right to testify and the ramifications of a decision to do so, specifically advising him that the decision to testify was his and not his lawyer's. After responding to the trial court's inquiries, Sutton indicated that he still wished to consult with his attorney on whether to take the stand. Following a recess, Sutton informed the court that he had decided not to testify. Beyond this, trial counsel testified at the hearing on the motion for new trial that he discussed with Sutton the benefits and risks of taking the stand and told him he had the right to testify and that the decision to testify was his to make. "Although a criminal defendant has a constitutional right to testify in his or her own defense, whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel." (Citation and punctuation omitted.) *Barron v. State*.[14] Our review of the record persuades us

that the trial court made the appropriate post-conviction findings to conclude that appellant's alleged denial of his right to testify lacked merit. Having thus failed to demonstrate that his constitutional right to testify was abridged, appellant cannot show he was denied effective assistance of

---

[12] *Randall v. State*, 207 Ga. App. 637, 641 (3) (428 SE2d 616) (1993).

[13] *Whited v. State*, 258 Ga. App. 195, 200 (6) (573 SE2d 449) (2002).

[14] *Barron v. State*, 264 Ga. 865, 866 (2) (452 SE2d 504) (1995).

counsel. Accordingly, this enumeration presents no basis for reversal.

(Citations. omitted.) Id.

3. Sutton's remaining enumeration of error has no merit.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JUNE 20, 2003.

*Bunn, Byrd, Newsom & Hix, Donna S. Hix*, for appellant.

*J. Gray Conger, District Attorney, Mark C. Post, Assistant District Attorney*, for appellee.