A04A0517. SERRATE v. THE STATE.

(601 SE2d 766)

RUFFIN, Presiding Judge.

Following a bench trial, Paul Serrate was found guilty of trafficking in cocaine and possessing cocaine with intent to distribute. On appeal, Serrate argues that the trial court erred in denying his motion for new trial. He also contends that he received ineffective assistance of counsel. Finally, Serrate claims that his convictions must be reversed because the State violated its duty to provide favorable information to him. For reasons that follow, we affirm.

On appeal from a criminal conviction, Serrate no longer enjoys a presumption of innocence, and we construe the evidence in a light most favorable to support the verdict.[1] Viewed in this manner, the record shows that a man named William "Brad" Dornick was the target of an ongoing drug investigation. On July 14, 1999, while working undercover, Detective Deters arranged to purchase cocaine from Dornick. When the two met in a parking lot, Dornick did not have the amount Deters requested, and Dornick said that he would have to call "his source." Dornick then called Serrate for the cocaine.

Dornick and Deters drove to Dornick's house, where the two waited approximately forty-five minutes. When Serrate arrived at the scene, Dornick said, "there he is, we'll be done with this in just a second now." Serrate exited his car, and he and Dornick started walking into the garage. Serrate then said, "I almost forgot what I came here for." Serrate reached into the passenger seat of his car and retrieved what Deters believed to be a bag of cocaine. Dornick and Serrate entered the house. After Serrate left, Dornick handed Deters two ounces of cocaine.

Another law enforcement officer, Thomas Cooper, was videotaping the outside of Dornick's house when Serrate arrived. However, it was dark outside by the time Serrate arrived, and the videotape was apparently of poor quality. The tape was nonetheless played for the trial court.

Dornick pleaded guilty to cocaine trafficking and testified on behalf of the State. According to Dornick, Serrate had been his cocaine supplier for over six years. Another admitted drug dealer, Alan Walker, also testified that Serrate supplied him with cocaine.

1. In his first enumeration of error, Serrate contends that the trial court erred in denying his motion for new trial. Serrate's

---

[1] See *McKay v. State*, 264 Ga. App. 726 (592 SE2d 135) (2003).

argument in this regard is not clear.[2] To the extent that Serrate challenges the sufficiency of the evidence, we find that the evidence was sufficient to support the verdict.[3] Given the evidence that Dornick placed a call to obtain more cocaine, that Serrate drove to Dornick's house and met briefly with Dornick, and that Deters received cocaine immediately thereafter, the trial court was authorized to find Serrate guilty beyond a reasonable doubt.

2. The crux of Serrate's argument appears to be that he received ineffective assistance of trial counsel. In order to prevail on this claim, Serrate must prove (1) that his trial attorney's performance was deficient; and (2) that, but for the attorney's alleged deficiency, there is a reasonable probability that the trial would have turned out differently.[4] In meeting this burden, Serrate "must overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct."[5]

(a) Serrate argues that his attorney was ineffective for failing to object to Dornick's and Walker's testimony "that they had bought drugs from Mr. Serrate for the past five years." According to Serrate, this testimony constituted inadmissible similar transaction evidence.

During the hearing on the motion for new trial, Serrate apparently did not question his trial counsel regarding counsel's failure to object to this testimony. However, the attorney testified that part of the defense included presenting character witnesses on Serrate's behalf, and such witness testified. The presentation of character witnesses opens the door to similar transaction evidence regardless of the State's compliance with notice requirements.[6] As the evidence was ultimately admissible, counsel was not ineffective for failing to object. It follows that Serrate has failed to establish ineffective assistance.

(b) Serrate also claims that his attorney was ineffective for failing to impeach Deters with his police report. In the police report, Deters stated that when Serrate left Dornick's house, "he had, in his hand, three or four of the one hundred dollar bags [of cocaine] that Dornick sells." During his closing, Serrate's attorney argued that Deters' statement to this effect was not corroborated by the video.

---

[2] His argument seems to be predicated upon his trial counsel's alleged ineffectiveness, which we address in Division 2.

[3] See *Smith v. State*, 263 Ga. App. 76, 78-79 (1) (a) (587 SE2d 226) (2003); *Carter v. State*, 261 Ga. App. 204, 205-206 (1) (583 SE2d 126) (2003); *Martinez v. State*, 259 Ga. App. 402-403 (577 SE2d 82) (2003).

[4] See *Wright v. State*, 265 Ga. App. 188, 190 (3) (593 SE2d 391) (2004).

[5] *Lloyd v. State*, 259 Ga. App. 636, 638 (1) (577 SE2d 854) (2003).

[6] See Uniform Superior Court Rule 31.3 (D).

However, the attorney never cross-examined Deters about this alleged discrepancy. According to Serrate, his attorney's failure to impeach Deters "was the equivalent of simply forgetting to call a key witness." We disagree. The video was introduced at trial, and Serrate's lawyer argued extensively regarding discrepancies between the video and Deters' testimony. Given counsel's unsuccessful effort to undermine Deters' credibility with these discrepancies, Serrate had not shown a reasonable probability that evidence of one more discrepancy would have resulted in a different outcome.

(c) According to Serrate, his attorney was ineffective for failing to thoroughly cross-examine Dornick and Walker regarding their criminal histories and any deals that they had reached with the State. Serrate cites *Vogleson v. State*[7] for the proposition that a defendant is entitled to such thorough examination.

Although an attorney is permitted to thoroughly question a testifying co-defendant regarding the details of any plea agreement, it does not necessarily follow that counsel is ineffective for failing to elicit all details of the agreement. Here, Serrate's attorney questioned Dornick about both a prior drug conviction and his expectation of favorable treatment in exchange for testifying. And counsel also questioned Walker regarding his hope that testifying against Serrate would be "taken into consideration" with regard to his case. Thus, the factfinder — in this case the trial court — was provided with evidence that both Dornick and Walker were potentially biased.

Serrate essentially argues that he was prejudiced by his attorney's failure to ask more probing questions. However, "[d]ecisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the client."[8] "Such tactical decisions provide no grounds for reversal unless they 'are so patently unreasonable that no competent attorney would have chosen them.' "[9] Here, we cannot say that trial counsel's failure to conduct a more thorough cross-examination was patently unreasonable.

(d) Serrate further contends that counsel was ineffective for failing to introduce evidence suggesting that another individual — David Jacobson — supplied Dornick cocaine. Again, the decision as to what evidence to introduce is strategic.[10] Given the dearth of evidence that Jacobson was involved in the July 14, 1999 transaction, it

---

[7] 250 Ga. App. 555 (552 SE2d 513) (2001).

[8] *Rose v. State*, 258 Ga. App. 232, 236 (2) (c) (573 SE2d 465) (2002).

[9] *Sutton v. State*, 261 Ga. App. 860, 864 (2) (a) (583 SE2d 897) (2003).

[10] See *Rose*, supra.

was not patently unreasonable for counsel to omit reference to this individual. "Although another lawyer may have conducted the trial differently, this does not mean that appellant did not receive a vigorous and complete defense."[11]

(e) Serrate maintains that his attorney "failed to investigate and present evidence of the intertwined relationship" between Dornick's attorney and other individuals involved in the case, whom Dornick's attorney also represented. Serrate also accuses Dornick's attorney of engaging in questionable conduct. Although Serrate implies that the disclosure of this information would have aided him in his defense, we fail to see the relevance of such evidence. And " '[t]he failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant.' "[12]

(f) Serrate asserts that counsel failed to correct several misstatements made by the prosecutor during the State's case-in-chief and closing argument. Specifically, Serrate contends that the prosecutor mistakenly said: (1) that Dornick's girlfriend was not at home when Serrate arrived; and (2) that Dornick and Walker gave statements implicating Serrate immediately after their arrests. We fail to see the significance of the alleged misstatements, and Serrate does not enlighten us in his brief. Under these circumstances, Serrate has not established a claim of ineffectiveness on this basis.

3. In his final enumeration of error, Serrate contends that "the prosecutor's conduct in this case violated the dictates of *Brady v. Maryland*[13] . . . and *Giglio v. United States*."[14] We disagree.

Under *Brady v. Maryland,* the prosecution is required to disclose evidence that is material to a defendant's guilt or innocence.[15] "This includes disclosure of impeachment evidence which could be used to show bias or interest on the part of a key State witness."[16] The State is also "under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness."[17] To warrant reversal based on such violation, Serrate must establish that had the evidence been disclosed, there is a reasonable probability that the outcome of the trial would have been different.[18]

---

[11] (Punctuation omitted.) *Sutton,* supra.

[12] *Letson v. State,* 236 Ga. App. 340, 341 (2) (512 SE2d 55) (1999).

[13] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[14] 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).

[15] See *Ferguson v. State,* 226 Ga. App. 681, 682 (2) (487 SE2d 467) (1997).

[16] Id.

[17] (Punctuation omitted.) Id. See also *Giglio,* supra.

[18] See *Ragland v. State,* 238 Ga. App. 664, 665 (519 SE2d 757) (1999).

(a) According to Serrate, the prosecutor failed to disclose that Walker "was effectively granted immunity" in exchange for his testimony. The record, however, does not support this contention. During Serrate's trial, Walker apparently had charges pending against him, and he testified that he hoped his cooperation would be considered favorably. The charges ultimately were dead docketed pending Walker's completion of pre-trial intervention. However, there is no evidence that this agreement was in place prior to Walker testifying.

(b) Serrate asserts that the prosecutor should have disclosed that charges against Dornick's girlfriend had been dead docketed. Assuming, for the sake of argument, that the dead docketing of charges stemmed from a "deal" with the State, the prosecutor was not required to reveal this information as the girlfriend did not testify at Serrate's trial.[19]

(c) In this same enumeration of error, Serrate contends that the prosecutor made other misrepresentations during trial, argued facts not in evidence, and "failed to apprise the trial court of the intertwined relationship of" Dornick's attorney and other individuals associated with the case.[20] We do not see how any of these alleged failings could be considered *Brady* or *Giglio* violations. Assuming that they are, Serrate's failure to establish prejudice precludes reversal on this basis.

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED JULY 1, 2004.

*J. Alfred Johnson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney*, for appellee.

---

[19] See *Johnson v. State*, 275 Ga. 630, 632 (8) (570 SE2d 309) (2002).

[20] Several of Serrate's arguments in this regard parallel those raised in his ineffective assistance claim.