## A03A0362. GONZALES v. THE STATE.
### (582 SE2d 524)

ADAMS, Judge.

Luis Vera Gonzales was indicted for murder but convicted of voluntary manslaughter and sentenced to 20 years, to serve 15. On appeal, he contends the evidence was insufficient and that the trial court erred by admitting his videotaped statement and photographs of the victim and by charging the jury on revenge and mutual combat.

1. Construed in favor of the verdict, the evidence shows that Gonzales and four friends had a confrontation with Antonio Paz Martinez at a car wash, during which Martinez pointed a sawed-off shotgun at an unarmed Gonzales. Shortly thereafter, Gonzales and his friends returned to Gonzales's apartment complex and encountered Martinez again. Martinez again pointed his shotgun at Gonzales from the window of his white car and threatened Gonzales. At that point, Gonzales and his friends went to get Gonzales's gun — a nine-millimeter, semi-automatic handgun with a collapsible stock and shoulder strap, equipped to accommodate a magazine that could hold twenty cartridges that in fact was loaded with about seventeen bullets.

Some four hours after the first two confrontations, the group of young men returned to the apartment complex and waited at the only entrance, behind the mailboxes, for about twenty-five or thirty minutes until the same white car returned. Gonzales testified that the car accelerated toward him, that he did not see any weapon, but that he was scared. As the car approached, Gonzales pulled his weapon out from under his shirt, walked out from behind the mailboxes into the street, pointed his gun, and pulled the trigger. His gun jammed, but he cleared it as the car passed by. He then shot one time at the car and saw the car crash. He and his friends then fled, and Gonzales hid the weapon at a construction site.

The bullet hit Martinez behind his left ear and exited behind his right ear. An expert testified that the blood spatter pattern found on the back of Martinez's hands and the location of the wounds were

consistent with Martinez having been shot from behind as he was driving with both hands on the wheel, looking back over his left shoulder.

Pursuant to OCGA § 16-5-2 (a),

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

Gonzales argued that the shooting was in self-defense. Whether the evidence shows that a person had a reasonable belief that it was necessary to use deadly force to prevent death or great bodily injury to himself is a question for the jury. *Anderson v. State*, 245 Ga. 619, 623 (1) (266 SE2d 221) (1980). When voluntary manslaughter is raised, the issue is whether the jury could have found beyond a reasonable doubt that the defendant "was so influenced and excited that he reacted passionately rather than simply to defend himself." (Citation and punctuation omitted.) *Mitchell v. State*, 199 Ga. App. 159, 160 (404 SE2d 329) (1991).

In this case, the jury was authorized to conclude that Martinez's actions that day provoked Gonzales into intentionally shooting him, and they were authorized to disbelieve that Gonzales thought he was going to be shot. This is especially true because at the time of the shooting, Gonzales did not see Martinez holding a gun, and he made the fatal shot after Martinez had passed by. See *Riley v. State*, 250 Ga. App. 427, 428-429 (1) (551 SE2d 833) (2001).

2. Gonzales contends that his videotaped statement should not have been admitted because he did not knowingly and intelligently waive his constitutional rights. Gonzales was age sixteen years and ten months at the time of the incident. Individuals who are less than 17 are considered juveniles by our criminal justice system. *Reynolds v. State*, 275 Ga. 548, 550 (569 SE2d 847) (2002).

The State presented evidence at a *Jackson-Denno* hearing showing that while in custody, Gonzales made an incriminating statement to investigators on videotape after being advised of his constitutional rights. The trial court ruled that the preponderance of the evidence indicated that the statement was voluntary under the nine-factor test for determining the voluntariness of a juvenile's statement as set forth in *Riley v. State*, 237 Ga. 124 (226 SE2d 922) (1976). Gonzales contends that the State did not meet its burden to show part of the third of the nine elements — that he knew the substance of the charge under investigation.

In *Riley*, the Supreme Court explained that the trial court should consider nine factors when determining whether a juvenile knowingly and intelligently waived his right to remain silent:

> [T]he age of the accused; the education of the accused; the knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney; whether the accused was held incommunicado or allowed to consult with relatives or an attorney; whether the accused was interrogated before or after formal charges had been filed; methods used in interrogation; length of interrogation; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused repudiated an extrajudicial statement at a later date.

*Henry v. State*, 264 Ga. 861, 862 (2) (452 SE2d 505) (1995), applying *Riley*. But, even after considering the nine factors, the trial court must determine whether, under the totality of the circumstances, there was a knowing and intelligent waiver of constitutional rights. *Riley*, 237 Ga. at 128. In this case, the trial court carefully considered each of the nine factors based on the evidence presented by the State at the *Jackson-Denno* hearing.

Gonzales contends that at the time of his interrogation, he did not know the charges against him.[1] The officers involved admitted that they did not tell him that they were investigating a murder; they only told him that they were investigating "a shooting." But at trial, Gonzales admitted that his stepfather had already told him that someone had been shot and killed. See *Bazansilva v. State*, 251 Ga. App. 608, 611 (554 SE2d 794) (2001) (defendant may already be aware of substance of charge). Therefore, Gonzales knew the general nature of the investigation.

Gonzales has also not explained how, in this case, the difference between understanding that the police were investigating a shooting as opposed to a murder would impact the totality of the circumstances after considering the entire nine-factor test in *Riley*. This is especially relevant in this case, because if Gonzales had been six weeks older, the *Riley* nine-factor test would not have applied. *Reynolds*, 275 Ga. at 550; *McDade v. State*, 270 Ga. 654, 656 (3) (513 SE2d 733) (1999). Our own review of the trial court's detailed reasoning shows that the decision is supported by the facts. Gonzales's burden on appeal is to show that the trial court was clearly erroneous in its

---

[1] Gonzales does not contend that he did not know the nature of his right to consult with an attorney; indeed, there are facts to show that he did.

factual findings on the admissibility of the statement. *Henry*, 264 Ga. at 862 (2). This he has not done.

3. Gonzales contends that the court should have prohibited introduction of certain pictures of the victim on the grounds that they were cumulative of other pictures and unfairly prejudicial. We find no abuse of discretion by the trial court regarding whether the probative value of the pictures was substantially outweighed by the danger of prejudice. See *Hicks v. State*, 256 Ga. 715, 720 (13) (352 SE2d 762) (1987).

Generally, pre-autopsy photographs of the victim are admissible to illustrate the nature and extent of the victim's wounds. *Berry v. State*, 267 Ga. 605, 612 (10) (481 SE2d 203) (1997); *Williams v. State*, 266 Ga. 882, 883 (2) (471 SE2d 888) (1996). And " '[a] photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant.' [Cit.]" *Bullard v. State*, 263 Ga. 682, 686 (5) (436 SE2d 647) (1993). Finally, "[p]hotographs which are material and relevant to any issue are admissible even though they are duplicative and may inflame the jury." *Simon v. State*, 253 Ga. 681, 682 (2) (324 SE2d 455) (1985).

Here, Gonzales objected to two of four pictures that show the victim's head in the car after the shooting, two of three pictures of the victim's blood-spattered hands, and the only photograph of the victim's full upper body and head after he was removed from the car. Our review of these pictures shows that even though there is some duplication, most offer a different perspective or magnification and some are not particularly gruesome. Further, the photographs were relevant to testimony given by the State's witnesses.

4. Gonzales contends the trial court should not have charged the jury on revenge for a past wrong and mutual combat because there was no evidence of either. The State requested a charge on revenge for a past wrong based on the contention that Gonzales was motivated to shoot Martinez as a result of the earlier altercations with Martinez, and that such a shooting would lack justification and constitute murder. The evidence supported the charge. Further, "no harm could have possibly resulted since the jury found defendant guilty of the lesser included offense of voluntary manslaughter, not murder." *Polley v. State*, 203 Ga. App. 825, 826-827 (3) (418 SE2d 107) (1992).

Gonzales requested the charge on mutual combat and therefore waived his right to appeal on this point. *Brodes v. State*, 250 Ga. App. 323, 327 (3) (551 SE2d 757) (2001).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MAY 22, 2003.

*Darel C. Mitchell*, for appellant.

*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.