### A04A0863. MIZELL v. THE STATE.
### A04A0864. THROWER v. THE STATE.
(598 SE2d 100)

ELDRIDGE, Judge.

A Douglas County jury found co-defendants Demani Mizell and Thomas Thrower guilty of two counts of armed robbery, three counts of aggravated assault, three counts of kidnapping, theft by receiving stolen property (motor vehicle), and obstruction of an officer, which charges arose in relation to their participation in the armed robbery of the Exxon Kwik Shop on Burnt Hickory Road in Douglasville. Mizell and Thrower appeal separately, raising various claims of error relating to the sufficiency of the evidence, the trial court's charge to the jury, the introduction of similar transaction evidence, severance, and merger. Their appeals have been consolidated, and, upon review of the errors as enumerated, we affirm their convictions.

1. Both appellants challenge the sufficiency of the evidence supporting their convictions, claiming that the lack of direct evidence of their participation in the charged crimes requires reversal. We disagree.

Mizell and Thrower were indicted along with three other men, Charles Headspeth,[1] Jerry Jackson, and Robert McKay. Jackson and McKay pled guilty to the charged offenses and testified at appellants' joint trial. From their testimony and other evidence introduced, the jury was authorized to find that Mizell, Thrower, and the other three men formulated a plan to steal a vehicle from the parking lot of Shannon Mall and drive it to the Bankhead Courts housing project in order to strip it. After appellant Thrower drove them to the mall in Jackson's Blazer, a Chevrolet Suburban was selected to be taken; both Mizell and Thrower knew the Suburban was to be stolen; they waited in the Blazer as entry into the Suburban was accomplished, and its ignition was accessed through the steering column. Thereafter, two of the men drove the Suburban to Bankhead Courts, while Thrower, Mizell, and a third member of the conspiracy followed in the Blazer. At Bankhead Courts, the plan to strip the Suburban was abandoned. Instead, Thrower and Mizell in the Blazer again followed

---

[1] Headspeth was tried and convicted separately; his conviction was affirmed by this Court in Case No. A04A0865.

the others in the Suburban. Both vehicles stopped in Douglas County at the Brookwood trailer park across the street from the Exxon Kwik Shop convenience store. There, the five men formed a plan to rob the Exxon.

Mizell and Thrower drove the Blazer to the Exxon, and both men entered the store for the purpose of "scop[ing] it out." A videocamera captured them in the store, and the videotape was introduced; evidence shows that while Thrower was purchasing a package of cigarettes, Mizell was randomly walking around the store, looking it over. Their actions were suspicious enough that a customer and the store owner "actually got up and looked at the vehicle" immediately after they left the store.

Getting back into the Blazer, Thrower and Mizell followed the others in the Suburban to the parking lot of a church two blocks away. Mizell told the others that the Exxon "only had two people in there." He told them that robbing the store would be "gravy." Testimony showed that both Thrower and Mizell "were down with it [(the armed robbery)]." The three perpetrators in the Suburban left to commit the armed robbery, while Thrower and Mizell waited at the church in the Blazer. The owner of the store and two customers were present during the armed robbery, and the actions of the perpetrators included pointing a gun at each of the store's occupants, removing money from a cash drawer, ordering the occupants into a corner of the store, and forcing them to kneel.

At the conclusion of the armed robbery, the three men returned to the church where the Suburban was abandoned with the engine still running. With Thrower driving and Mizell in the front passenger seat, the three men "jumped" into the Blazer, "Quick-real quick," and directed Thrower to, "Drive, go." Thrower fled toward Interstate 20. An armed robbery BOLO[2] had been issued on the Blazer and its occupants. The vehicle was spotted by two Douglas County Sheriff's deputies who initiated a stop by activating emergency equipment on their patrol car; Thrower pulled the Blazer over. As the deputies approached, Thrower "gassed it and drove off." A chase ensued. By radio, the deputies obtained permission to utilize a "pit maneuver" which causes a fleeing vehicle to spin out and flip, effectively ending a chase. The "pit maneuver" was instituted, and the Blazer flipped over. Thrower, Mizell, and the other three men ran into the woods bordering the interstate. Mizell was apprehended 400 yards away in a brush pile. Money from the robbery was collected from the woods into which the perpetrators fled. Further investigation led to Thrower's arrest.

---

[2] Be on the look out police broadcast.

A participant to a crime may be convicted although he is not the person who directly commits the crime.[3] A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be convicted of the crime as a party thereto.[4] While mere presence at the scene is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of a crime.[5] Whether Mizell and Thrower were parties to the charged crimes and aided and abetted the others therein or intentionally advised, encouraged, counseled, or procured the others to commit the crimes was a question for the jury.[6] Viewing the foregoing evidence in the light most favorable to the jury's verdict, it was sufficient for a rational trier of fact to have found Mizell and Thrower guilty beyond a reasonable doubt as parties to the charged crimes.[7]

2. Next, appellants challenge the trial court's charge to the jury, claiming error in (a) a charge on the use of similar transaction evidence, (b) a failure to charge on "accessory after the fact," and (c) a recharge which allegedly stressed the law relating to conspiracy in response to a jury question. We find no error in the enumerated claims.

(a) Mizell contends that the charge on similar transaction evidence failed to inform the jury that it must determine whether the prior act evidence was similar enough to the charged offense so that "proof of one tended to prove the latter." We have reviewed the disputed charge in its entirety and find that it adequately instructed the jury that the prior act evidence "may be considered for the limited purpose of showing, *if it does*, the course of conduct of Demani Mizell in the crimes charged in the case now on trial." (Emphasis supplied.) While this phraseology omits the "proof of one tends to prove the latter" language, the charge informs the jury that it must decide if the prior act does show the charged conduct. Moreover, this is precisely the charge the trial court gave to the jury contemporaneously with the introduction of the similar transaction evidence, and no objection to the charge was raised. Indeed, Mizell submitted no request for a similar transaction charge.[8] Under these circumstances, we find no

---

[3] OCGA § 16-2-20.

[4] Id. at (b) (3) and (4).

[5] *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992).

[6] *Harper v. State*, 155 Ga. App. 764, 765 (1) (272 SE2d 736) (1980).

[7] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Belsar v. State*, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003); *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997).

[8] See *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

error.[9]

(b) Thrower asserts error in the failure to charge the jury on the law relating to "accessory after the fact," which he claims as his sole defense. "Accessory after the fact" is a separate crime for which Thrower was not indicted, and thus, the failure to give an unrequested charge thereon was not error.[10] Further and pretermitting the issue of whether a separate crime may constitute a "sole defense," the court instructed the jury that Thrower's mere presence at the scene of the crime, without participation in the crime, would not authorize a conviction, and that mere association with one who committed the crime, without participation in the crime, would not authorize a conviction. The court also charged that, to convict, the jury would have to find that the State proved beyond a reasonable doubt that Thrower knew the crimes were being committed and knowingly aided and abetted in some way and that, if the jury did not so find, its duty was to acquit. The charge as a whole fairly presented the issues, including Thrower's current theory that he was only an accessory after the fact.[11]

(c) Our decision in Division 2 (b), supra, renders meritless Thrower's additional claim that the trial court should have charged the jury sua sponte on the law relating to "accessory after the fact" when the jury requested a clarification recharge on the qualitative relationship between parties to a crime, criminal intent, and conspiracy. To the extent that this claim of error also encompasses a contention that the trial court erred in charging the jury on the law relating to conspiracy, we reject such claim, since the evidence introduced clearly supported a conspiracy charge.[12] Finally, we have reviewed the trial court's response to the jury's request and find that the court's reply which left the legal issues for the jury to determine in relation to the evidence did not "stress[ ] the State's conspiracy theory," as Thrower claims.

3. Next, Mizell contends the trial court erred in permitting the introduction of similar transaction evidence because Mizell's identity as the perpetrator of the prior act was established by the arresting officer who was present when a witness identified Mizell on the scene shortly after the prior act was committed; Mizell claims that the officer's identification testimony was "inadmissible hearsay." "However, the challenge to the admission of the evidence as hearsay is waived because [Mizell] failed to make a contemporaneous objection

---

[9] *Sedlak v. State*, 275 Ga. 746, 749 (2) (e) (571 SE2d 721) (2002).

[10] *State v. Hightower*, 252 Ga. 220, 223, n. 2 (312 SE2d 610) (1984).

[11] *McCoy v. State*, 273 Ga. 568, 573 (12) (544 SE2d 709) (2001); *Klinect v. State*, 269 Ga. 570, 575 (9) (501 SE2d 810) (1998).

[12] *Belsar v. State*, supra at 262 (2); *Huey v. State*, 263 Ga. 840, 842 (3) (439 SE2d 656) (1994).

to the evidence at trial. [Cits.]"[13] Further, an officer's testimony regarding a witness' identification of a perpetrator on the scene shortly after the crime was committed is admissible as res gestae.[14]

4. We find no merit in Thrower's assertion that the trial court erred in denying his motion to sever. There is no claim that the number of defendants created confusion of evidence and law.[15] Thrower and Mizell did not present antagonistic defenses, since both claimed ignorance with regard to the charged offenses.[16] Also, Mizell did, in fact, testify and attempt to exonerate both Thrower and himself as being completely unaware of what was going on.[17] Moreover, the jury was expressly instructed that the three prior attempted car thefts introduced against Mizell as similar transactions "do[ ] not relate to Mr. Danley's client. That's Mr. Thrower" and that such evidence "does not relate to defendant Thomas Thrower."[18] Accordingly, Thrower has not shown an abuse of discretion in the denial of his motion to sever.[19]

In addition, the evidence against Thrower appears equally as strong as that against Mizell. Thrower was the driver of the Blazer that transported the perpetrators to the mall to steal the Suburban; he followed the perpetrators to Douglas County to rob the Exxon; he entered the Exxon to "scope it out" in preparation for the robbery; and he transported the perpetrators to the interstate in flight after the robbery. Upon being approached by law enforcement, Thrower "gassed [the Blazer] and drove off," and he attempted to avoid capture by engaging in the police chase which then ensued. Under these circumstances, Thrower's claim that his conviction resulted from a "spillover" of evidence against Mizell provides no basis for reversal.[20]

5. Our review of the record and the errors enumerated on appeal, as well as those before this Court in the appeal of co-defendant Headspeth, including the State's concessions, requires the following findings.[21]

Mizell and Thrower's conviction for aggravated assault under Count 3 of the indictment should have been merged with their

---

[13] *Wilson v. State*, 277 Ga. 114, 117 (2) (587 SE2d 9) (2003).

[14] *Smith v. State*, 236 Ga. App. 122, 125 (4) (511 SE2d 223) (1999), citing *Stovall v. State*, 216 Ga. App. 138-139 (1) (453 SE2d 110) (1995) (witness' statement to officer made on the scene shortly after crime committed is admissible as res gestae); accord *Christensen v. State*, 245 Ga. App. 165 (537 SE2d 446) (2000); *Evans v. State*, 201 Ga. App. 20, 26 (4) (410 SE2d 146) (1991).

[15] *Burgess v. State*, 276 Ga. 185, 187 (4) (576 SE2d 863) (2003).

[16] Id. at 188.

[17] *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975).

[18] *Hannah v. State*, 261 Ga. 336, 337 (2) (404 SE2d 440) (1991).

[19] OCGA § 17-8-4.

[20] *Burgess v. State*, supra at 188.

[21] *Williams v. State*, 277 Ga. 368, 369 (2) (589 SE2d 563) (2003); *Curtis v. State*, 275 Ga. 576 (1) (571 SE2d 376) (2002).

conviction for armed robbery under Count 1 for purposes of sentencing. Accordingly, the sentences imposed under Count 3 are vacated.

Mizell and Thrower's conviction for aggravated assault under Count 4 of the indictment should have merged with their conviction for armed robbery under Count 2 for purposes of sentencing. Accordingly, the sentences imposed under Count 4 are vacated.

Mizell and Thrower's conviction for aggravated assault under Count 5 of the indictment should have merged with their conviction for kidnapping under Count 8 for purposes of sentencing. Accordingly, the sentences imposed under Count 5 are vacated.

*Judgments in both cases are affirmed and sentences on Counts 3, 4 and 5 in both cases are vacated. Ruffin, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2004.

*Lee W. Fitzpatrick*, for appellant (case no. A04A0863).

*Danley & Associates, Leonard Danley*, for appellant (case no. A04A0864).

Demani Mizell, *pro se.*

*David McDade, District Attorney, James E. Barker, Christopher R. Johnson, Todd S. Boyce, Assistant District Attorneys*, for appellee.