## A05A0393. DIXON et al. v. THE STATE.
### (615 SE2d 838)

RUFFIN, Chief Judge.

In a joint trial, William Dixon and William Harrison were convicted of theft by taking. Harrison was also found guilty of violating a limited driving permit. In this combined appeal, Dixon and Harrison challenge the sufficiency of evidence and the denial of their ineffective assistance of counsel claims. They also contest the legality of their arrests and the search of the vehicle. In addition, Dixon claims that the trial court erred in dismissing his motion to suppress and that his trial counsel provided ineffective assistance by failing to renew his motion to suppress at trial, and by failing to object to illegally admitted evidence. After review, we find no error and affirm.

On appeal, Dixon and Harrison no longer enjoy the presumption of innocence, and the evidence must be viewed in a light most favorable to the verdict.[1] When so considered, the evidence shows that after midnight on July 27, 2000, Lauren Sneed, who was spending the night at the home of Paul and Paula Mahedy, noticed the activation of an exterior motion detector light. Suspicious, Sneed looked outside and saw two men pulling the Mahedys' utility trailer

---

[1] *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998).

out of their driveway. One man was wearing dark clothing and the other had light-colored clothes. Sneed and the Mahedys' daughter hurried to tell the Mahedys about the theft in progress. Paul Mahedy grabbed his keys to his Chevrolet Suburban, as Paula Mahedy went outside where she saw "a white full size truck" with what appeared to be "a tool chest" on the back pulling the trailer away. She conveyed that information to a 911 dispatcher. While following the white pickup pulling his trailer, Mahedy noticed that the truck had a "really loud" exhaust system. While driving on a wooded and curvy road, he lost sight of the pickup. On a hunch, Mahedy turned down a nearby dead-end street. There, he discovered his trailer abandoned beside the road.

When Deputy Greg Warnack arrived, he observed a tire print that appeared to be from the vehicle that had left the trailer behind. After conferring with Mahedy, Warnack radioed a lookout for a full-sized white pickup truck with a loud muffler system.

Shortly thereafter, Sergeant Rex Morris saw such a vehicle and initiated an investigatory stop. The vehicle stopped was a white, full-sized pickup that had three trailer hitches. The truck had a tool box mounted on top of the bed and was occupied by two men. The driver, Harrison, was wearing light-colored clothing and Dixon, his passenger, had on a dark shirt and dark pants or jeans. Morris learned that Harrison was driving in violation of a restricted permit. Investigators detained the men briefly until the arrival of Sneed, who told police that they looked like the men whom she saw earlier.

Meanwhile, after photographing the tire prints left in the soft dirt by the trailer, Lieutenant Dick Lowry proceeded to examine the tires on Harrison's truck. Lowry felt the tire treads were consistent with the prints left behind.

Dixon and Harrison were then arrested for the theft of the trailer, and a towing company was contacted to remove Harrison's truck. Before impounding Harrison's truck, investigators inventoried its contents, and Lowry discovered a number of "For Sale" signs typically used for trailers and also found a drive-out tag from a trailer dealership in Conyers.

At trial, in explaining the heavy police presence that night in the vicinity of the Mahedys' home, Lowry testified that at that time, we "were experiencing a rash of thefts in that particular area." On that night, Lowry and two other officers "were working an active investigation trying to find where all these trailers were going." Lowry testified that within sixty to seventy days before this incident, there had been fourteen trailer thefts within a five-mile radius of the Mahedys' residence. The prices on the nine signs found in Harrison's

truck ranged from $350 to $900. An appraiser valued the trailer at the time it was stolen at between $700 and $750.

Dixon and Harrison testified at trial. Both admitted having done ceramic tile work in the subdivision where the trailer was stolen and being very familiar with the area. Harrison also admitted driving that night on the limited driving permit.

1. Dixon and Harrison contend that the evidence was insufficient to sustain their convictions. They argue that the evidence "was insufficient on its face" and "was contradicted on every major point (save one) by the testimony of both Appellants, who explained in detail why they were where they were, what they were doing, and the reason for the route taken."

When reviewing the evidence, we do not weigh the evidence or assess the credibility of witnesses but only determine whether the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offense.[2] Here, the evidence was sufficient to authorize the jury to find that Dixon and Harrison absconded with the Mahedys' trailer by attaching it to Harrison's pickup truck and taking it without permission from the Mahedys' premises.[3]

2. Dixon and Harrison also assert that there was insufficient probable cause for their arrests and that "all evidence flowing from their arrest should have been suppressed." They claim that the information available to the arresting officers failed to establish more than "grave suspicion or possible cause [sic]." We disagree.

Dixon and Harrison were stopped shortly after the theft occurred and not far from where the stolen trailer was left on the side of the road. Harrison's truck had trailer hitches, a tool box, two male occupants, and a noticeably loud muffler system, facts that corresponded to the description of the vehicle given by witnesses. Then, when Morris checked Harrison's restricted driving permit, he discovered that Harrison was not supposed to be driving. And, before the arrests, a witness told officers that "they appear[ed] to be the same two men that [she] had seen earlier" taking the trailer. In addition, the investigator who examined the tire marks left next to the trailer noted that the extra wide tires on Harrison's truck were consistent with those tread marks. Under these circumstances, the officers had probable cause to arrest Dixon and Harrison.[4]

---

[2] *Baggs v. State*, 265 Ga. App. 282, 283-284 (1) (593 SE2d 734) (2004).

[3] See *Howard v. State*, 263 Ga. App. 593, 596 (1) (b) (588 SE2d 793) (2003).

[4] See *Brown v. State*, 278 Ga. 724, 726-727 (2) (609 SE2d 312) (2004).

As to suppressing the evidence found in the truck, Dixon and Harrison failed to show that the police acted unreasonably in arranging for the vehicle to be towed to an impound lot.[5] Harrison apparently made no request for an alternate disposition of his truck. Considering the lateness of the hour and the location of the vehicle, the decision to impound was reasonable.[6] "The contents of an impounded vehicle are routinely inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger."[7] "Therefore, once the [truck] was properly impounded, the inventory search that uncovered the [price tags and dealer drive-out tag] was also proper."[8]

3. Dixon contends that the trial court erred in dismissing his motion to suppress. He complains that after he failed to show up for a pretrial motion hearing, the trial court summarily directed the dismissal of all of his motions. We find this argument unpersuasive. At the time of the investigatory stop, Dixon was a passenger in Harrison's truck. Dixon did not assert an ownership interest in the truck. As a mere passenger who did not claim a possessory interest in either the truck or its contents, Dixon lacked standing to object to the search.[9]

4. Dixon and Harrison contend that their trial counsel was ineffective by failing to challenge the initial stop of their vehicle. Citing *Vansant v. State*,[10] they assert that the stop was made without particularized articulable suspicion that their vehicle, as distinct from all others, was the vehicle sought. We disagree.

An officer may conduct a brief investigative stop of a vehicle when such stop is justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[11] The facts here indicate that police had a particularized and objective basis for suspecting criminal activity that justified stopping and detaining the men briefly.[12] At the time of the investigatory stop, Harrison was driving a full-sized white pickup truck with a loud exhaust system, and the vehicle was discovered within three minutes of the lookout and about a mile from the scene

---

[5] See *Colzie v. State*, 257 Ga. App. 691, 692 (2) (572 SE2d 43) (2002).

[6] See id.

[7] *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985).

[8] *Colzie*, 257 Ga. App. at 692 (3).

[9] See *Howren v. State*, 271 Ga. App. 55, 56 (2) (608 SE2d 653) (2004); *State v. Saia*, 249 Ga. App. 69, 70 (547 SE2d 407) (2001).

[10] 264 Ga. 319 (443 SE2d 474) (1994).

[11] See id. at 320 (2).

[12] See *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

of the crime.[13] Under these circumstances, the police had specific, articulable facts which, when taken together with the rational inferences arising therefrom, provided the requisite reasonable suspicion to justify conducting an investigative inquiry to determine whether Dixon and Harrison were engaged or had recently been engaged in criminal activity.[14]

In order to prevail on an ineffective assistance of trial counsel claim, a defendant must show not only that his trial lawyer's performance was deficient, but also that, but for his lawyer's purported deficiency, there is a reasonable probability that the outcome of the trial would have been different.[15] Failure to make both showings is fatal to an ineffectiveness claim.[16] Since Dixon and Harrison failed to establish a deficiency in their counsel's representation in this regard, they cannot prevail on an ineffectiveness claim on this basis.[17]

5. Dixon and Harrison also contend that their trial counsel rendered inadequate assistance by failing to object to the admission of the "For Sale" signs and the dealer drive-out tag recovered from the truck as evidence of other crimes. They claim that the signs and dealer tag bore no connection to the charges against them and comprised "prejudicial evidence" admitted without a hearing as required by Uniform Superior Court Rule 31. When the state attempted to introduce this evidence, defense counsel objected on the basis of relevancy and prejudice. Defense counsel pointed out that the signs did not even identify what was being sold. The state countered that the evidence was relevant to show a motive for the theft. Over continuing objection, the dealer tag and the signs were admitted.

Contrary to Dixon and Harrison's claims, the items at issue were not presented as part of similar transaction evidence but were offered to suggest a possible plan to sell the trailer as the motive for the theft. The items were found during a lawful inventory search, and Dixon and Harrison have offered no basis that would mandate their exclusion. What weight, if any, to give this evidence was up to the jury.[18] Since the trial court did not abuse its discretion in allowing the evidence over objection, this cannot serve as the basis for an ineffective assistance claim.[19]

---

[13] See *Buffington v. State*, 228 Ga. App. 810, 811-812 (492 SE2d 762) (1997).

[14] See *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997).

[15] See *Herndon v. State*, 235 Ga. App. 258 (509 SE2d 142) (1998).

[16] See id.

[17] See *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

[18] See *Jones v. State*, 253 Ga. App. 376, 377 (559 SE2d 119) (2002) ("It is not our job as an appellate court to speculate what evidence the jury chose to believe.").

[19] See *Cummings v. State,* 261 Ga. App. 281, 284 (6) (b) (582 SE2d 231) (2003).

6. Dixon claims that his trial counsel was ineffective "to the extent trial counsel did not renew [his] motion to suppress at the time of trial or object to the evidence recovered from the truck on the grounds stated in the motion."

As discussed above, Dixon's arrest and the search of Harrison's truck were not unlawful. "[F]ailure to pursue a futile motion does not constitute ineffective assistance."[20] Therefore, this basis for asserting an ineffective assistance claim must necessarily fail.[21]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 17, 2005.

*John T. Strauss*, for appellants.
*W. Kendall Wynne, District Attorney, David E. Boyle, Assistant District Attorney*, for appellee.

---

[20] (Punctuation omitted.) *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003).
[21] See id. at 264-265.
[1] *Brassfield v. State*, 242 Ga. App. 747, 748 (2) (531 SE2d 148) (2000).