A05A2277. MORRIS v. THE STATE.
A05A2278. O'BERRY v. THE STATE.
A05A2279. HERRIN v. THE STATE.
(624 SE2d 281)

BLACKBURN, Presiding Judge.

Following a jury trial, Perry Morris and William O'Berry were convicted of involuntary manslaughter and terroristic acts, and Levey Herrin was convicted of voluntary manslaughter and terroristic acts. All three separately appeal the denial of their respective motions for new trial, arguing that insufficient evidence supported their convictions. Morris additionally appeals on the grounds that the trial court erred in failing to charge the jury on reckless conduct as a lesser included offense of aggravated assault and in admitting gory photographs of the victim that prejudiced the jury. Herrin further appeals on the ground that the trial court erred in charging the jury on voluntary manslaughter despite no evidence of intent or provocation. For the reasons set forth below, we affirm in all three cases.

1. Appellants in each of their respective appeals (Case Nos. A05A2277, A05A2278, and A05A2279) contest the sufficiency of the

evidence supporting their convictions. When evaluating the sufficiency of the evidence, we review whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia.*[1] This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the factfinder's assessment of the weight and the credibility of the evidence. *Escutia v. State.*[2]

So construed, the evidence shows that one night the victim and his girlfriend were driving in his truck on a rural dirt road when they passed a truck carrying Morris, O'Berry, and O'Berry's girlfriend. Both trucks stopped and the victim, who was angry about a fight he had had with Morris and O'Berry months earlier, confronted Morris and O'Berry while brandishing a baseball bat. An argument ensued, and the victim retrieved a rifle from his truck which he fired into the air. Morris and O'Berry left in Morris's truck; however, the victim, as well as several of the victim's friends in another vehicle, gave chase. The chase lasted for several miles until the victim and his friends stopped at an intersection with a dirt road that led to the home of O'Berry's brother-in-law, Levey Herrin. Morris's truck continued toward Herrin's home, but the victim and his friends did not follow.

Upon arriving at Herrin's home, Morris and O'Berry informed Herrin that they were being threatened and chased by the victim. Herrin grabbed a rifle, got into his own vehicle, and drove back toward the intersection where the victim and his friends had stopped. Morris and O'Berry immediately followed in Morris's truck. Seeing the approaching headlights of Herrin's and Morris's vehicles, the victim and his friends decided to leave; however, Herrin, Morris, and O'Berry followed the victim. In an effort to elude his pursuers, the victim drove into the yard of a nearby home, but Herrin, Morris, and O'Berry followed and attempted to trap the victim while screaming threats at him. The victim then drove out of the yard and proceeded on the road back toward Herrin's home with Herrin, Morris, and O'Berry still in pursuit. Despite the victim passing the intersection leading toward Herrin's home, Herrin, Morris, and O'Berry continued their pursuit and attempted to run the victim off the road. At one point, the victim's girlfriend aimed the victim's rifle outside the truck's window toward Herrin's and Morris's vehicles but was unable to fire it. Still attempting to escape, the victim swerved in front of Herrin's vehicle, but as he did, Herrin fired his rifle toward the victim's truck, fatally wounding the victim in the head.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).
[2] *Escutia v. State*, 277 Ga. 400, 402 (2) (589 SE2d 66) (2003).

Charged with felony murder, involuntary manslaughter, aggravated assault, and terroristic acts, Morris and O'Berry were only found guilty of involuntary manslaughter and terroristic acts. They contend that they should not have been convicted of involuntary manslaughter or terroristic acts[3] because the evidence was insufficient to prove that they were party to the crimes actually committed by Herrin. We disagree. According to OCGA § 16-5-3 (a), "[a] person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." Moreover, in instances where the evidence presented could reasonably allow a rational trier of fact to find a defendant guilty of murder, a jury is authorized to find the defendant guilty of involuntary manslaughter as a lesser included offense. See *Thomas v. State.*[4]

Although neither Morris nor O'Berry fired the shot that killed the victim, a participant to a crime may be convicted although he is not the person who directly commits the crime. *Mizell v. State.*[5] Pursuant to OCGA § 16-2-20 (b) (3) and (4), a person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be convicted of the crime as a party thereto. *Mizell*, supra. Additionally, while mere presence at the scene is not sufficient to convict one of being a party to a crime, criminal intent may be inferred from conduct before, during, and after the commission of a crime. *Sands v. State.*[6] The evidence here that both Morris and O'Berry purposefully involved Herrin in their confrontation with the victim, knew Herrin was armed with a rifle, and assisted Herrin in pursuing the victim at the time of the shooting, was sufficient to enable a rational trier of fact to find both Morris and O'Berry guilty beyond a reasonable doubt as parties to Herrin's crimes or any lesser included offenses. See *Cummings v. State;*[7] *Rogers v. State;*[8] *Thomas*, supra. Thus, sufficient evidence supported Morris's and O'Berry's convictions of involuntary manslaughter and terroristic acts.

Charged with felony murder, involuntary manslaughter, and terroristic acts, Herrin was acquitted of felony murder but convicted

---

[3] OCGA § 16-11-37 (b) (2) provides: "A person commits the offense of a terroristic act when . . . [w]hile not in the commission of a lawful act, he or she shoots at or throws an object at a conveyance which is being operated or which is occupied by passengers."

[4] *Thomas v. State*, 183 Ga. App. 819, 822 (3) (360 SE2d 75) (1987).

[5] *Mizell v. State*, 266 Ga. App. 833, 835 (1) (598 SE2d 100) (2004).

[6] *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992).

[7] *Cummings v. State*, 273 Ga. 547, 548 (1) (544 SE2d 429) (2001).

[8] *Rogers v. State*, 251 Ga. 408, 409 (2) (306 SE2d 652) (1983).

of voluntary manslaughter and terroristic acts. He similarly contends that the evidence was insufficient to support his conviction of voluntary manslaughter,[9] arguing that there was no evidence of his intent to cause the victim's death or that he was provoked by the victim. We disagree. Here, the evidence that the victim's girlfriend pointed a rifle toward Herrin's vehicle during the high speed chase, as well as that the victim earlier acted aggressively toward Morris and O'Berry, could be considered sufficient provocation to excite the passion necessary for voluntary manslaughter. See *Syms v. State*.[10] Accordingly, sufficient evidence supported Herrin's conviction of voluntary manslaughter.

### Case No. A05A2277

2. In Case No. A05A2277, Morris also appeals on the ground that the trial court erred in failing to charge the jury on reckless conduct as a lesser included offense of aggravated assault. This enumeration of error, however, is irrelevant, since the jury acquitted Morris of the aggravated assault charge. See *Mallory v. State*.[11]

3. Morris further contends that the trial court erred in admitting gory pre-autopsy photographs of the victim, arguing that the photographs served no legitimate purpose and were prejudicial as depicting post-mortem procedures. We disagree. When a trial court is faced with the challenge that the probative value of photographs of the deceased victim is outweighed by its tendency to unduly prejudice the jury, it must exercise its discretion in determining admissibility. *Woods v. State*.[12] However, "[a] photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." *Brown v. State*.[13]

Here, the photographs that were admitted into evidence were taken prior to the autopsy. While the photographs showed the victim's head shaved and the tissue immediately surrounding the bullet wound pulled back, such photographs cannot be equated with those

---

[9] OCGA § 16-5-2 (a) provides: "A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person."

[10] *Syms v. State*, 175 Ga. App. 179, 180 (1) (332 SE2d 689) (1985).

[11] *Mallory v. State*, 271 Ga. 150, 153 (5) (517 SE2d 780) (1999).

[12] *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995).

[13] *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983).

depicting post-mortem surgical procedures. See *Brown v. State*[14] (photograph showing portion of victim's head shaven around fatal wound was admissible); *Holmes v. State*[15] (pre-autopsy photographs of victim's body with tongue depressors inserted in 18 stab wounds did not violate *Brown* because state did not mutilate or damage the body); *Bell v. State*.[16] Moreover, the photographs were necessary to show the entry and exit wounds and thus the direction from which the fatal shot was fired. Compare *Brown*, supra, 250 Ga. at 866-867 (5). Accordingly, the trial court did not abuse its discretion in finding that the probative value of the photographs outweighed any prejudicial effect and thus did not err in admitting the photographs into evidence.

### Case No. A05A2279

4. In Case No. A05A2279, Herrin further contends that the trial court erred in charging the jury on voluntary manslaughter as a lesser included offense of felony murder despite Herrin's objection. Herrin specifically argues that the evidence did not demonstrate an intent to kill the victim or that Herrin was provoked so as to excite the passion necessary for voluntary manslaughter. We disagree. As we held in Division 1, sufficient evidence existed to support Herrin's conviction of voluntary manslaughter. Furthermore, "on the trial of a murder case, if there be any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given to the jury." (Punctuation omitted.) *Boone v. State*.[17] Thus, the trial court properly charged the jury on voluntary manslaughter.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED DECEMBER 9, 2005.

*Martin H. Eaves*, for appellant (case no. A05A2277).

*McGee & McGee, James B. McGee III*, for appellant (case no. A05A2278).

*John C. Culp*, for appellant (case no. A05A2279).

[14] *Brown v. State*, 270 Ga. 601, 604 (6) (512 SE2d 260) (1999).

[15] *Holmes v. State*, 261 Ga. 714, 715 (2) (410 SE2d 295) (1991).

[16] *Bell v. State*, 257 Ga. 560, 561 (3) (361 SE2d 488) (1987).

[17] *Boone v. State*, 234 Ga. App. 373, 374 (3) (506 SE2d 884) (1998).

*Richard E. Currie, District Attorney, George E. Barnhill, Assistant District Attorney*, for appellee.