A07A0107. BRELAND v. THE STATE.
(648 SE2d 389)

MILLER, Judge.

A jury found Penny Lasandra Breland guilty of voluntary man-slaughter, as a lesser included offense of murder, felony murder, aggravated assault with a deadly weapon, and possession of a knife during the commission of a felony.[1] Breland appeals, challenging the sufficiency of the evidence supporting her convictions. She further argues that she received ineffective assistance of counsel. For reasons that follow, we affirm.

1. In reviewing Breland's challenge to the sufficiency of the evidence, we construe the evidence in a light favorable to the verdict and determine whether the evidence authorized the jury to find Breland guilty of the charged offenses beyond a reasonable doubt. See *Morris v. State*, 276 Ga. App. 775, 776 (1) (624 SE2d 281) (2005). So viewed, the evidence shows that on July 29, 2003, a group of people, including Melvin Garland and Breland's sister Rachel, were drinking in the parking lot of the apartment complex where Breland lived. The group was talking loudly, and Rachel was arguing with an individual nicknamed "Stink." At some point, Breland approached the group. Believing that Rachel needed assistance, Breland hit Stink, who fought back with the aid of another female group member.

The fight eventually broke up, and the group dispersed. Breland, however, began fighting with Rachel, apparently because Breland did not believe her sister had helped her during the altercation with Stink. Apartment security personnel intervened as Breland "went at" Rachel with a knife. Although the security officers initially removed Breland from the scene, she later returned, stating that she "was going to stab somebody."

Wielding a knife, Breland initially chased after Garland's mother, who lived nearby and happened to be outside. Breland then confronted Garland in front of his mother's apartment. When Garland told Breland to leave his mother alone, Breland moved toward him, swinging the knife. Garland tried to run, but he fell, and Breland began stabbing him. Garland suffered multiple stab wounds during the attack, including a fatal wound to the chest.

---

[1] The trial court merged the felony murder and aggravated assault counts into the voluntary manslaughter conviction for purposes of sentencing.

Breland testified that, on the night in question, she believed her sister was in trouble. She confronted the group in the parking lot and fought with several individuals, including Stink, who beat her and chased her into a neighboring apartment. Breland stated that she hit her sister later that night because her sister had not assisted her during the initial fight. She subsequently saw Garland walking toward her with a stick. Although Breland admitted that she had a knife, she testified that she does not remember chasing or stabbing Garland, whom she had known since middle school. According to Breland, she "snapped" that evening because she was tired of people beating her. She explained that she has been in several relationships with abusive men who attempted to kill her. She also testified, however, that she had no prior problems with Garland.

"A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). Based on the evidence presented, the jury was authorized to conclude that the events that night, as well as the past abuse suffered by Breland, provoked Breland to such an extent that she intentionally stabbed and killed Garland, thus committing voluntary manslaughter. See *Morris*, supra, 276 Ga. App. at 778 (1); *Gonzales v. State*, 261 Ga. App. 366, 367 (1) (582 SE2d 524) (2003). Evidence of Garland's stabbing and death also supports the jury's verdict with respect to aggravated assault with a deadly weapon, felony murder, and possession of a knife during the commission of a felony. See OCGA §§ 16-5-21 (a) (2); 16-5-1 (c); 16-11-106 (b); see also *Strong v. State*, 251 Ga. 540, 541 (307 SE2d 912) (1983) ("Aggravated assault, assault with a deadly weapon, upon the homicide victim can support a finding of felony murder.") (citation omitted).

On appeal, Breland asserts that she acted in self-defense against Garland, who approached her swinging a stick. The jury, however, was entitled to reject any self-defense claim, particularly given the evidence that she chased Garland and stabbed him after he fell. See *Gonzales*, supra, 261 Ga. App. at 367 (1). Breland's challenge to the sufficiency of the evidence, therefore, lacks merit.

2. Breland also contends that she received ineffective assistance of counsel at trial. Specifically, she argues that her trial attorney should have obtained a mental evaluation of her prior to trial to determine criminal responsibility. The trial court rejected Breland's challenge below, finding that counsel provided reasonable assistance.

To sustain her ineffective assistance claim, Breland "must show both that counsel's performance fell below a reasonable standard of conduct and that, but for counsel's deficient performance, there is a

reasonable probability the outcome of the trial would have been different." (Footnote omitted.) *Anthony v. State*, 275 Ga. App. 274, 279 (6) (620 SE2d 491) (2005). On appeal, we review a trial court's determination that a defendant received effective assistance of counsel under the clearly erroneous standard. See *Perry v. State*, 269 Ga. App. 178, 180 (1) (603 SE2d 526) (2004).

At the hearing on her motion for new trial, Breland offered expert evidence from a forensic psychologist who evaluated her in January 2006, shortly before the hearing. The psychologist testified that Breland exhibits signs of bipolar disorder, intermittent explosive disorder, and occasional psychotic episodes. Asserting that the events leading up to the stabbing could have triggered a psychotic episode, the psychologist concluded that Breland was not criminally responsible for Garland's death.

Breland argues that if trial counsel had obtained a mental evaluation before trial, similar expert evidence regarding her lack of criminal responsibility could have been presented to the jury. She notes that trial counsel's strategy at trial was to show that she "snapped," and the jury refused to convict her of murder, finding her guilty instead of voluntary manslaughter. Breland contends that if the jury had been presented with expert testimony regarding her mental illnesses, "[t]here is a reasonable possibility" that the jury would have found her not responsible for her actions.

It is true that "where a defense attorney . . . receive[s] information from a reliable source that his client has had a history of psychiatric problems, but fail[s] to adequately investigate this history, counsel fail[s] to provide effective assistance." (Citation and punctuation omitted.) *Martin v. Barrett*, 279 Ga. 593, 594 (619 SE2d 656) (2005). If trial counsel lacks notice of a prior psychiatric problem, however, the failure to investigate a defendant's mental health does not necessarily constitute deficient performance. See id. at 594-595; see also *Perry*, supra, 269 Ga. App. at 181. Furthermore, the evidence in this case supports the trial court's determination that defense counsel provided reasonable and effective assistance.

Trial counsel testified at the new trial hearing that he vaguely remembered discussing Breland's "mental facilities" with Breland and possibly her family. Counsel could not recall the details of those discussions. But his own dealings with Breland revealed her to be cooperative and communicative, and he saw no signs that she was out of "touch with reality." He also testified that based on his conversations with Breland and her family members, he found no justification for requesting a mental evaluation or hiring a mental health expert to assist in her defense.

Counsel's testimony does not establish notice of any mental health problems. Moreover, further discussions with Breland's family would not have revealed a history of significant mental illness. Although several family members testified at the new trial hearing that Breland has "bad nerves" and was treated for this condition when she was three or four years old, nothing in the testimony evidenced a serious mental issue. Breland's father also testified that at the time of the incident, Breland, who was then 24 years old, was taking care of her children and herself "very well."

Counsel did not know that Breland suffered from bipolar disorder, psychosis, or any serious mental illness. Undoubtedly, Breland's actions on July 29, 2003, were bizarre, and she testified that she could not remember stabbing Garland. The State, however, offered evidence that she was intoxicated at the time, and she admitted at trial that she had been drinking. Furthermore, trial counsel used Breland's behavior and past history of abuse to argue that she stabbed Garland in the "heat of passion." By doing so, he successfully convinced the jury to reject the murder charge contained in the indictment.

Under these circumstances, the trial court properly denied Breland's ineffective assistance claim. See *Perry*, supra, 269 Ga. App. at 181 (1); *Morris v. State*, 226 Ga. App. 535, 539 (2) (b) (488 SE2d 685) (1997). Compare *Martin*, supra, 279 Ga. at 595 (defense counsel's failure to investigate defendant's sanity unreasonable where counsel knew of defendant's recent hospitalization and treatment for mental illness). Accordingly, her allegation of error on this ground presents no basis for reversal.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED MAY 8, 2007.

*Phinia-Cou J. Aten*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.