## A08A0146. DAUGHERTY v. THE STATE.
(662 SE2d 318)

RUFFIN, Presiding Judge.

A DeKalb County jury found Stephen Daugherty guilty of armed robbery and aggravated assault. Daugherty appeals, contending that the trial court erred in denying his motion to suppress and in refusing to give a proposed jury instruction and that he received ineffective assistance of counsel. Finding no error, we affirm.

1. Daugherty contends that the trial court should have suppressed evidence in his possession at the time of his arrest because the police did not have probable cause to arrest him. We disagree. We will uphold a trial court's ruling on a motion to suppress if there is any evidence to support it, and we construe the evidence in a light favorable to the trial court's findings and judgment.[1] So viewed, the record shows that on February 8, 2003, three men stole Regina Jones's vehicle, a Toyota 4Runner, from her at gunpoint. As Jones parked her vehicle, two men exited a nearby van and approached her. One man pointed a gun in her face and demanded that she leave the vehicle and give him her keys. This man, identified at trial as "Malik," was never apprehended. The second man was on the opposite side of her vehicle, and she did not see his face. A third man, whom Jones identified at trial as Ricardo Wright, exited the van and approached her. Jones was made to lie on the ground, but then the second man instructed her to get up, pointing a gun at her. She was afraid to look at this man's face. Because they were unable to start the vehicle, the men made Jones start it. They then fled in Jones's vehicle and their van. Jones's purse was still in her vehicle.

Jones immediately reported the carjacking, giving descriptions of the vehicles and the suspects. This description was broadcast to police. Approximately six minutes after the 911 call, Officer Case of the DeKalb County Police Department saw a van and a 4Runner driving together near the scene of the carjacking. The one man in the van and the two men in the 4Runner matched the general description of the suspects. Officer Case called police dispatch and followed the vehicles. He lost sight of the vehicles momentarily, but within about 30 seconds found them parked at the loading dock of a warehouse. Officer Case saw the driver of the van get into the 4Runner, and the vehicle proceeded up an embankment and into another parking lot shared by a church and a Hampton Inn.

Sergeant Mitchum of the DeKalb County Police Department, who had heard on his radio about the carjacking and Officer Case's pursuit, saw the 4Runner drive to the Hampton Inn. He saw the

---

[1] See *O'Neal v. State*, 273 Ga. App. 688, 689 (616 SE2d 479) (2005).

suspects exit the vehicle, attempt to enter the Hampton Inn through a side entrance, and then run down an embankment, jump over a fence, and reach Highway 78. At least one of the suspects crossed Highway 78 on foot. Two of the men were wearing dark clothing and one was wearing a jacket. Sergeant Mitchum described the suspects' attire over the radio. He testified at trial that the clothing Daugherty was wearing when arrested was consistent with one of the suspects' attire.

Detective Wortham and Officer Miguel of the DeKalb County Police Department also heard the details of the pursuit on the radio. They saw the 4Runner approaching the Hampton Inn and followed it; however, by the time they reached it, the suspects had fled. Detective Wortham and Officer Miguel heard on the radio that the suspects were running across Highway 78, and they drove to the other side of the highway. There they saw Daugherty, dressed in dark clothing, in the drive-up window area of a closed bank. The clothing he was wearing was consistent with the description of one of the suspects. Daugherty was dirty, he had foliage and debris on him, his shoes were muddy, and he was sweating heavily. The officers stopped him and asked why he was dirty; Daugherty replied that he had been in a fight and was coming from a nearby Motel 6 where he was staying with his girlfriend. Daugherty could not provide his room number or the girlfriend's name, however. The officers arrested him and searched his pockets, where they found Jones's driver's license, debit cards, and credit card.

Daugherty argues that Detective Wortham and Officer Miguel did not have probable cause to arrest him because they had only "a generic description" of the suspects and merely observed that he was sweaty, had debris on his clothing, and gave evasive answers to their questions. Daugherty ignores, however, the collective knowledge of the police officers involved in the pursuit. "[A] determination of probable cause need not rest on the knowledge of the arresting officer alone, but can rest upon the collective knowledge of the police when there is some degree of communication between them."[2] An officer has probable cause for an arrest when "at the time of the arrest, the facts and circumstances within his knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a suspect had committed or was committing an offense."[3] Daugherty also relies heavily on *Burnham v. State*,[4] but *Burnham* is distinguishable because in that

---

[2] (Punctuation omitted.) *Murphy v. State*, 286 Ga. App. 447, 449 (649 SE2d 565) (2007).

[3] (Punctuation omitted.) *Vega v. State*, 285 Ga. App. 405, 406 (1) (646 SE2d 501) (2007).

[4] 265 Ga. 129 (453 SE2d 449) (1995).

case there was no eyewitness to the crime and police were merely searching for individuals seen in the vicinity of the crime. There was no other evidence tying them to the crime.

In this case, at the time of Daugherty's arrest, the officers knew that within minutes of the carjacking three men matching an eyewitness's description were seen in the vicinity of the crime driving vehicles also matching the eyewitness's description. These men were followed by police until they abandoned their vehicles and fled across a highway and through a muddy, overgrown area. Almost immediately, the officers found Daugherty on the other side of the highway, at a closed business, with muddy shoes and debris on his clothes, sweating profusely. He generally matched the description given of one of the fleeing suspects, and he could not give a logical explanation for his presence at that location. Under these circumstances, the trial court did not err in concluding that the officers had probable cause to arrest Daugherty.[5]

2. Daugherty alleges that the trial court erred in refusing to give a jury instruction he requested on "accessory after the fact." The instruction requested read: "A defendant can never be guilty of [both being a] party to a crime and [being an] accessory after the fact." The trial court refused to give this instruction, finding that there was no evidence to support it.

" 'A requested charge must be legal, apt, and precisely adjusted to some principle involved in the case and be authorized by the evidence. If any portion of the request to charge fails in these requirements, denial of the request is proper.' "[6] Here, Daugherty was not charged with being an accessory after the fact; rather, he contends that there was some evidence from which the jury "could . . . infer that he did not become aware of, or provide any aid to, the criminal act until it had already been completed." As Daugherty was not charged with being an accessory after the fact, his requested charge was neither apt nor relevant to any principle involved in the case.[7] Moreover, since the trial court fully charged the jury on parties to a crime, mere presence, mere association, intent, and knowledge,

---

[5] See *Dixon v. State*, 273 Ga. App. 740, 742 (2) (615 SE2d 838) (2005) (probable cause existed to arrest defendant stopped soon after theft of trailer and near where it was abandoned, when suspects and vehicle matched description given by eyewitnesses); *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996) (probable cause existed to arrest defendant when vehicle and its occupants, including defendant, matched description in police lookout, and occupants fled from police); *Gray v. State*, 207 Ga. App. 648, 649-650 (2) (428 SE2d 663) (1993) (probable cause existed to arrest defendant who fit description of suspect, who was breathing heavily and sweating, whose shoes and socks were wet and covered in grass clippings and those conditions existed at scene of crime, and who gave conflicting explanations of his presence near scene of crime).

[6] *Hatcher v. State*, 277 Ga. App. 611, 613 (2) (627 SE2d 175) (2006).

[7] See id.

we conclude that the jury instructions, when taken as a whole, fairly presented the issues, including Daugherty's contention that he was only an accessory after the fact.[8] Thus, the trial court did not err in refusing to give the proposed instruction.[9]

3. Daugherty also argues that his trial counsel was ineffective because he failed to: impeach a critical State witness; request "the clearest possible accessory after the fact jury instruction"; and allow Daugherty to participate in jury selection. In order to establish ineffective assistance of counsel, Daugherty must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[10] There is a "strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct," and we will affirm the trial court's decision unless it is clearly erroneous.[11]

(a) Daugherty's co-defendant Ricardo Wright pled guilty to robbery and testified against Daugherty at trial.[12] Daugherty argues that trial counsel did not fully impeach Wright with the benefits he received as the result of his plea, specifically parole and probation benefits. Trial counsel did, however, elicit testimony from Wright that, while he originally faced a forty-year sentence if convicted of armed robbery and aggravated assault, his plea reduced his sentence to ten years.

"Although an attorney is permitted to thoroughly question a testifying co-defendant regarding the details of any plea agreement, it does not necessarily follow that counsel is ineffective for failing to elicit all details of the agreement."[13] And tactical decisions, including decisions as to cross-examination of witnesses, "provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them."[14] As trial counsel obtained testimony from Wright that he had substantial motivation to testify against Daugherty, we cannot say that his failure to ask about specific effects of the plea deal was patently unreasonable.[15]

---

[8] See *Klinect v. State*, 269 Ga. 570, 575 (9) (501 SE2d 810) (1998); *Mizell v. State*, 266 Ga. App. 833, 836 (2) (b) (598 SE2d 100) (2004).

[9] See *Mizell*, supra; *Hatcher*, supra.

[10] See *Thomas v. State*, 282 Ga. 894, 895 (2) (655 SE2d 599) (2008).

[11] (Punctuation omitted.) *Davis v. State*, 267 Ga. App. 245, 246 (1) (599 SE2d 237) (2004).

[12] A DeKalb County officer arrested Wright in the same area where Daugherty was arrested about 20 minutes after the 911 call. After taking Wright to jail, the officer found a gun in the back seat of the patrol car. At trial, Wright testified that he, Daugherty, and Malik stole Jones's vehicle at gunpoint and that both Malik and Daugherty had guns with them. Wright stated that when they left the scene, Daugherty was driving the 4Runner. Wright then removed Jones's identification and credit and debit cards from her purse and gave them to Daugherty.

[13] *Serrate v. State*, 268 Ga. App. 276, 278 (2) (c) (601 SE2d 766) (2004).

[14] (Punctuation omitted.) Id.

[15] See id.; *Duggan v. State*, 285 Ga. App. 273, 275 (2) (645 SE2d 733) (2007).

Moreover, given the overwhelming evidence of Daugherty's guilt, it is unlikely that additional impeachment of Wright would have changed the outcome of the trial.[16] Under these circumstances, Daugherty has not established ineffective assistance of counsel.

(b) Daugherty alleges that trial counsel was ineffective because he failed to request a clearer jury instruction on accessory after the fact. Because of our holding in Division 2 that the charge as a whole fairly covered the relevant legal principles, however, we cannot find that the failure to request such an instruction was prejudicial to Daugherty's defense, and his claim of ineffective assistance fails.[17]

(c) Daugherty contends that he received ineffective assistance of counsel because he was not allowed to participate in jury selection. Trial counsel testified, however, that Daugherty was present during voir dire and that they did have "some discussion" about prospective jurors. Daugherty has made no attempt to suggest how jury selection would have been different if he had participated.[18] And his argument that the failure to record voir dire prevents him from making such a showing fails, as " 'a general unspecified hope of reversible error during voir dire does not win a new trial on the ground a record should have been made so as to accommodate a search for error now buried in unrecorded history.' "[19] Accordingly, we reject his claim of ineffective assistance of counsel on this basis.[20]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED MAY 16, 2008 ▮▮▮▮▮

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.

---

[16] See *Duggan*, supra.

[17] See *Butts v. State*, 273 Ga. 760, 768 (18) (546 SE2d 472) (2001); *Lockett v. State*, 258 Ga. App. 178, 182 (3) (a) (573 SE2d 437) (2002).

[18] See *Hinkle v. State*, 282 Ga. App. 328, 328-329 (638 SE2d 781) (2006) (defendant cannot rely on bare allegations that defense counsel should have acted differently).

[19] *Williams v. State*, 277 Ga. 853, 859 (6) (e) (596 SE2d 597) (2004).

[20] See *Johnson v. State*, 275 Ga. App. 21, 26 (7) (d) (619 SE2d 731) (2005).